```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JENNY JOZA,
                              Plaintiff,              MEMORANDUM
                                                      AND ORDER
            - against -
                                                      07-CV-4153 (ENV) (JO)
WW JFK LLC, et al.,
                              Defendants.
----------------------------------------------------------X
```

**JAMES ORENSTEIN, Magistrate Judge:**

In a letter motion filed on November 26, 2008, plaintiff Jenny Joza ("Joza") seeks the imposition of sanctions against the defendants on the basis of alleged spoliation of evidence. Docket Entry ("DE") 29. In a supplemental submission in support of that motion, Joza also seeks the reimbursement of her reasonable costs, including attorneys' fees, arising from her efforts to obtain discovery. DE 40 at 6-9. For the reasons set forth below, I now deny Joza's motion for sanctions based on alleged spoliation but I direct the defendants to reimburse Joza's reasonable costs, including attorneys' fees, in seeking to vindicate her legitimate discovery rights through litigation made necessary by the defendants' unjustifiably incorrect discovery responses.

I.   Background

Joza has asserted claims under federal and state wage laws, seeking compensation for unpaid overtime hours she claims to have worked while employed as a switchboard operator and reservation supervisor by defendant WW JFK LLC, which does business as the Ramada Plaza Hotel (the "Hotel"). To bolster her claim, Joza sought to have the defendants produce certain documents, known as reservation facsimiles (or, simply, "faxes") that she says she regularly prepared during the course of her employment. Joza contends that each such document would

bear a date-and-time stamp and a code indicating the identity of its author, and that such information would help establish the hours she actually worked. *See* DE 40 at 1-2.

The record plainly establishes that when Joza first made her request for the faxes, and for several months thereafter, the defendants unambiguously conveyed the impression that they had the documents available for production. Joza originally sought to have the defendants produce the faxes as part of her initial set of document demands, which she served on March 2, 2008. When the defendants responded to the demand, they gave no reason to believe that the faxes had been destroyed; instead, they objected to the production on a variety of grounds, including an assertion that compliance with Joza's demand would be "unduly burdensome[.]" *See* DE 40 at 2. Following that objection, the parties engaged in extensive communications about the request, all of which assumed that the faxes remained available for production. *See id*. at 3. Those communications failed to produce an agreement, and on October 13, 2008, Joza ultimately filed a motion to compel the defendants to produce the documents. DE 20. The defendants continued to object without giving any hint that the faxes at issue no longer existed: in opposing the motion to compel, they argued in part that Joza's request should be denied because of what they described as "the burdens associated with collecting and reviewing six years of facsimiles[.]" DE 21 at 2. After discussing the matter at length with the parties during a telephone conference on October 24, 2008 – and never once being given any reason to believe that the faxes had by that time been destroyed – I ordered the defendants to provide Joza with an opportunity to review a representative sample of the faxes at issue to determine whether her request was reasonably calculated to lead to the discovery of admissible evidence. DE 24.

On November 10, 2008, eight months after Joza's first document request, the defendants informed Joza that the faxes had not been retained and were no longer available for production. As the defendants' counsel informed Joza, "I had understood, and reported to you, that the guest files might contain facsimiles. However, I now understand that to be unlikely." *See* DE 40 at 4. When Joza made a scheduled visit to the defendants' counsel's offices to review the files several days later on November 14, 2008, the reservation faxes were not among the documents the defendants made available to her. DE 29-3 (Declaration of Jenny Joza) ¶¶ 3-4.

Understandably frustrated at this turn of events, Joza sought relief. In support of her spoliation claim, Joza submitted a declaration stating that in her experience, the Hotel had a practice of retaining the reservation faxes she had sought for accounting purposes in its "reservation files." *Id.* ¶¶ 5, 7. She further recounted a conversation she claimed to have had with Indrapaul Choloram ("Choloram"), an auditor in the Hotel's accounting department. According to Joza, Choloram told her that in October and November of 2007, and again in 2008, defendant Robert Santucci ("Santucci"), the Hotel's sales director, had ordered him and another employee named David Firebrace ("Firebrace") to destroy boxes containing records from the years 2000 to 2004 including the "reservation files" in which Joza believes the faxes were kept. *Id*. ¶¶ 6-9. Joza did not include an affidavit from Choloram himself, and in her letter-motion her counsel asserted that Choloram did not wish to testify for fear of reprisal. DE 29 at 2.

The defendants responded on December 2, 2008. Their counsel explained that the faxes at issue had never, in fact, been placed in storage, but had been discarded as a routine matter in the ordinary course of business before the litigation began; he also sought to explain how he had come to have a mistaken understanding of the Hotel's document retention practices that led him

3

to assume that the faxes would have been in storage. In addition, the defendants submitted an affidavit by Santucci, in which he asserted that the Hotel does not maintain reservation faxes and denied having told anyone to remove from storage or destroy historical reservation faxes. DE 30. That initial response did not include any statement by Choloram or Firebrace.

On December 12, 2009, I discussed the matter with the parties during a telephone conference. In light of the factual dispute, and the absence of any statement by Choloram or Firebrace, I decided to schedule an evidentiary hearing. DE 31. Following an adjournment, I scheduled the hearing for January 29, 2009. Order dated January 6, 2009. Three days before the scheduled hearing date, on January 26, 2009, the defendants submitted a supplemental response to the motion for spoliation sanctions. DE 36. Specifically, the defendants asked me to consider an affidavit they had recently obtained from Choloram, in which he explicitly denied Joza's account of their conversation, denied that he had destroyed any reservation faxes, and denied that Santucci had asked or ordered him to do so. DE 36-2.

In light of the contents of Choloram's affidavit, Joza's counsel readily agreed that an evidentiary hearing would be a waste of resources, and the parties agreed to have me decide the matter on the basis of the existing record and supplemental memoranda to be submitted later. DE 37. The defendants submitted their supplemental brief on February 13, 2009, and Joza responded one week later. DE 39; DE 40.

II. Discussion

A. Spoliation

I conclude that Joza has not met her burden of demonstrating that any spoliation occurred. The record plainly does not support her claim that Santucci directed his employees to destroy the

4

faxes at issue: the only source for such an assertion that she ever cited was Choloram, and he has explicitly said not only that it never happened, but that he never said otherwise to Joza. To be sure, the defendants' handling of the instant dispute does not inspire confidence. They did not assert that the faxes had been destroyed until they had been ordered to produce some of them after months of litigation. After belatedly reporting that the faxes no longer existed, the defendants did not rebut Joza's claims regarding Choloram with first-hand information until after their attempt to rely on Santucci's carefully worded affidavit proved unsuccessful. And when the defendants finally did submit Choloram's affidavit at the last minute, both the timing of its submission and its provenance left me with lingering doubts as to whether Choloram was subjected to undue pressure by his employer to disavow Joza's accusations.[1] Nevertheless, the burden is plainly on Joza, and she has not met it.

Apparently recognizing that the record cannot support her original claim of overt spoliation, Joza switched gears in her supplemental submission and argued that even if the Hotel did not routinely preserve its reservation faxes, it should have begun to do so once it was on notice that the instant litigation was reasonably foreseeable. DE 40 at 7. As a general matter, Joza is correct that the defendants were under a duty to preserve evidence once they had reason to believe she would assert a claim against them. *See Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998); *Smith v. City of New York*, 388 F. Supp. 2d 179, 189 (S.D.N.Y. 2005). They

---

[1] Although it does not bear directly on the credibility of Choloram's statement, I note that his affidavit was notarized by Mary Birmingham, who is herself a defendant in this action. Particularly in light of Joza's assertion that Choloram would be a reluctant witness for fear of retaliation from the defendants, the decision to have an interested party notarize Choloram's affidavit was unfortunate. I trust that in the future, the defendants' counsel will assign such ministerial duties to someone who has no stake in the outcome of the litigation.

were on such notice as of August 2, 2007, when Joza first sent a demand letter to the Hotel. *See* DE 39 at 8. By that time, however, reservation faxes created in May 2007 – the last month for which Joza asserts a wage claim – would already have been destroyed pursuant to the Hotel's normal practices. As a result, even accepting at face value that the evidentiary nature of the reservation faxes should have been apparent to the defendants at the outset – a view I do not necessarily endorse, but will assume for purposes of analysis – Joza has failed to demonstrate that the defendants failed to discharge their duty to preserve evidence. I therefore deny Joza's request for the imposition of sanctions based on the defendants' alleged spoliation of evidence.

### B. Costs Related To Joza's Motion To Compel

While there is no basis to sanction the defendants for destroying evidence they were under a legal obligation to preserve, it would be unfair to make Joza bear the burdens of ferreting out the truth of the matter. Joza reasonably asked for production of the reservation faxes in March 2008. If the defendants and their counsel had taken appropriate care in formulating their response to that request, they would promptly have informed Joza that the faxes were no longer in existence. Such a timely and accurate response would have ended the matter. But because the defendants' counsel made what he has candidly admitted was a mistake, and then did not timely correct it, Joza has quite reasonably taken steps to vindicate her legitimate interest in discovery – first by filing a motion to compel, and ultimately by filing a motion for sanctions. At a minimum, Joza is entitled to recoup all of her reasonable costs, including attorneys' fees, arising from the motion to compel production of the faxes and the resulting steps she was forced to take to determine the disposition of the faxes up until her motion for spoliation sanctions.

On the current record, I also conclude that she is entitled to recover her costs associated with the sanctions motion itself, although in light of Choloram's affidavit that is a closer call. If Joza did simply fabricate the statements she attributed to Choloram, as the defendants contend, she has no right to reimbursement. On the other hand, if Joza merely misinterpreted her conversation with Choloram, then in fairness the defendants should bear the burden arising from the fact that the matter had not been resolved long before. Accordingly, I direct Joza's counsel to present a detailed bill of costs to the defendants setting forth all of the costs arising from the defendants' incorrect response to the initial discovery demand for which Joza seeks reimbursement; if the defendants object to any portion of those costs and the parties cannot resolve the matter on consent, the defendants may file objections to the specific costs that they contest. I will defer ruling on any such remaining dispute until after the trial of Joza's underlying claims.

III. Conclusion

For the reasons set forth above, I deny plaintiff Joza's motion to impose sanctions on the defendants based on their alleged spoliation of evidence, but I direct the defendants to reimburse the plaintiff's reasonable costs, including attorneys' fees, in seeking to vindicate her legitimate discovery rights through litigation made necessary by the defendants' unjustifiably incorrect discovery responses.

**SO ORDERED.**

Dated: Brooklyn, New York
February 24, 2009

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge