UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| _____ | x | |
| JENNY JOZA, | § | |
| | § | |
| Plaintiff, | § | CASE NO. 07-CV-4153 |
| vs. | § | |
| | § | |
| WW JFK LLC, dba, RAMADA PLAZA HOTEL; | § | |
| and, as individuals, MARY BIRMINGHAM, ALI | § | |
| CHIANI, ROBERT SANTUCCI, and RENE | § | |
| PEREIRA, | § | |
| | § | |
| Defendants. | § | |
| _____ | x | |

## DEFENDANTS' POST-TRIAL MEMORANDUM

Matthew L. Hoeg
Texas State Bar No. 09772880
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas  77002
Telephone: (713) 220-4012
Facsimile:  (713) 238-7328

Joseph Patella (JP 3196)
ANDREWS KURTH LLP
450 Lexington Avenue, 15th Floor
New York, New York  10017
Telephone:  (212) 850-2839
Facsimile:  (212) 850-2929

ATTORNEYS FOR DEFENDANTS WW JFK,
LLC, MARY BIRMINGHAM, ALI  CHIANI,
ROBERT SANTUCCI, AND RENE PEREIRA

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

I. INTRODUCTION ................................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................................. 2

III. ARGUMENT AND AUTHORITIES .................................................................................... 9

    A.       NYLL Article 6 does not authorize Joza's wage and overtime claims. ......................... 9

    B.       Joza's state law claims are preempted. ....................................................................... 12

    C.       Joza has failed to prove her FLSA claims. .................................................................. 17

    D.       Joza has failed to prove that the individual Defendants were her employers. ............. 27

    E.       Joza failed to prove that any alleged violations were willful. ...................................... 29

IV. CONCLUSION AND PRAYER .......................................................................................... 30

CERTIFICATE OF SERVICE .................................................................................................. 32

HOU:2979870.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*14 Penn Plaza LLC v. Pyett*,
   ___ U.S. ___; 129 S. Ct. 1456 (April 1, 2009) ....................................................16

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946) ...............................................................................22, 23

*Atchley v. Heritage Cablevision Assoc.*,
   101 F. 3d 495 (7th Cir. 1996) ....................................................................13

*Broad v. Boeing Manufactured Housing Inc.*,
   681 F. Supp. 1224  (W.D. Tex. 1987) ..........................................................18

*Brumbelow v. Quality Mills, Inc.*,
   462 F. 2d 1324  (5th Cir. 1972) ...................................................................22

*Chao v. Gotham Registry, Inc.*,
   514 F.3d 280 (2d Cir. 2008) .......................................................................21

*Davis v. Food Lion*,
   792 F.2d 1274 (4th Cir. 1986) ...................................................................17

*Diaz v. Electronic Boutique of America, Inc.*,
   2005 U.S.Dist. LEXIS 30382 (W.D.N.Y. 2005) ........................................10

*Ellis v. HarperCollins Publishing*,
   2000 U.S. Dist. LEXIS 8598 (S.D.N.Y. 2000) ...........................................14

*Flores v. The Pinnacle Group*,
   2007 U. S. Dist. [LEXIS 18394] (S.D.N.Y. 2007) .....................................14

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
   646 F.2d 413 (9th Cir. 1981) ..................................................17, 20, 21, 24

*Gallegos v. The Brandeis School*,
   189 F.R.D. 256, 259 (E.D.N.Y. 1999) ........................................................10

*Grochowski v. Phoenix Const.*,
   318 F.3d 80 (2d Cir. 2003) ...................................................................16, 18

*Harvill v. Westward Commc'ns LLC*,
   311 F. Supp. 2d, 573 (E.D. Tex. 2004) *Aff'd* 433 F.3d 428 (5th Cir. 2005).............16, 17, 20

HOU:2979870.1

*Herman v. ARS Sec. Servs, Ltd.*,
  172 F.3d 132 (2d Cir. 1999) ............................................................................27

*Holzapfel v. Town of Newburgh*,
  145 F.3d 516 (2d. Cir. 1998) ..............................................................17, 20, 21

*Kaplan v. Aspen Knolls Corp.*,
  290 F.Supp.2d 335, 339 (E.D.N.Y. 2003) ........................................................10

*Mascol v. E & L. Transp.,Inc.*,
  387 F. Supp. 2d 87 (E.D.N.Y. 2005) ................................................................15

*McKnight v. Kimberly Clark Corp.*,
  149 F.3d 1125 (10th Cir. 1999) ..................................................................22, 23

*McLaughlin v. Richland Shoe Co.*,
  486 U.S. 128 (1988) ....................................................................................29, 30

*Newton v. City of Henderson*,
  47 F.3d 746 (5th Cir. 1995) ....................................................17, 21, 22, 23

*Noble v. University Place Corp.*,
  224 F.R.D. 330 (S.D.N.Y. 2004) ......................................................................10

*O'Rourke v. Carmen M. Pariso, Inc.*,
  501 F. Supp. 2d 445  (W.D.N.Y. 2007)............................................................10

*Reeves v. Int'l Tele. and Teletype Corp.*,
  616 F.2d 1342 (5th Cir. 1980), *cert. denied*, 449 U.S. 1077 (1981) ......................................17

*Reich v. Depart. of Conservation & Natural Res.*,
  28 F.3d 1076 (11th Cir. 1996) ..........................................................................17

*Reich v. New York City Transit Auth.*,
  45 F.3d 646 (2d Cir. 1995) .........................................................................17, 19

*Reich v. S. New England Telecomm. Corp.*,
  121 F.3d 58  (2d Cir. 1997) ..............................................................................18

*Seever v. Carrols Corp.*,
  528 F. Supp. 2d 159 (W.D.N.Y. 2007) ...........................................17, 18, 19, 22

*Slattery v. HCA Wesley Rehab. Hosp., Inc.*,
  83 F. Supp. 2d 1224 (D. Kan. 2000)..................................................................26

iv

*Tran v. Tran*,
860 F. Supp. 91 (S.D.N.Y. 1993) *affirmed in relevant part*, 54 F.3d 115
(2d Cir. 1995) ...................................................................................................11

*United Paperworks Int'l Union v. Misco, Inc.*,
484 U.S. 29 (1987) ...........................................................................................12

*Vera v. Saks & Co.*,
218 F. Supp. 2d 490 (S.D. N.Y. 2002) .........................................................13, 15

*Wheeler v. Grayco Trucking Corp.*,
985 F.2d 108 (3d Cir. 1993) ..............................................................................13

*Wright v. Brae Burn Country Club, Inc.*,
2009 U.S. Dist. LEXIS 26492 (S.D.N.Y. 2009) ...............................................16

*Zaitsev v. Saloman Brothers, Inc.*,
60 F.3d 1001, 1004 (2d Cir 1995) ..................................................................9, 15

*Zheng v. Liberty Apparel Co., Inc.*,
355 F.3d 61, 78 (2d Cir. 2003) .............................................................10, 16, 27

## STATE CASES

*Edwards v. Jet Blue Airways Corp.*,
852 N.Y.S.2d 724, 727 (Sup. 2008) ..................................................................10

*Firtell v. Update, Inc.*,
851 N.Y.S.2d 57 (Sup. 2007) ..........................................................................9, 15

*Jara v. Strong Steel Door, Inc.*,
20 Misc. 3d 1135(A), 872 N.Y.S.2d 691, 2008 WL 3823769 (Sup. 2008)..........10

*Kettler v. Fleming*,
820 N.Y.S.2d 348 (3rd Dept. 2006)....................................................................10

*Tierney v. Capricorn Investors, L.P.*,
189 A.2d 629, 632, 532 N.Y.S.2d 700, 703 (1st Dept.)
*appeal denied*, 599 N.Y.S.2d 804 (1993) ......................................................9, 15

## FEDERAL STATUTES

29 C.F.R. § 785.12 ...............................................................................................17
29 U.S.C. § 185....................................................................................................11
29 U.S.C. §§ 201 *et seq*.........................................................................................1
29 U.S.C. § 203(d) ...............................................................................................27
29 U.S.C. § 207(a) (1)..........................................................................................16

HOU:2979870.1

# STATE STATUTES

12 N.Y.C.R.R. § 142-2.2 ...........................................................................................................10

N.Y. Lab. Law § 190, *et seq.* ...................................................................................1, 2, 8, 9, 10

N.Y. Lab. Law § 650, *et seq.* ................................................................................................10

HOU:2979870.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| | x |
| JENNY JOZA, | § |
| | § |
| Plaintiff, | § CASE NO. 07-CV-4153 |
| vs. | § |
| | § |
| WW JFK LLC, dba, RAMADA PLAZA HOTEL; | § |
| and, as individuals, MARY BIRMINGHAM, ALI | § |
| CHIANI, ROBERT SANTUCCI, and RENE | § |
| PEREIRA, | § |
| | § |
| Defendants. | § |
| | x |

## DEFENDANTS' POST-TRIAL MEMORANDUM

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants, WW JFK LLC, d/b/a RAMADA PLAZA HOTEL (the "Hotel"), MARY BIRMINGHAM, ALI CHIANI, ROBERT SANTUCCI, and RENE PEREIRA (collectively, "Defendants"), and file this Post-Trial Memorandum, and would respectfully show the following:

## I.
## INTRODUCTION

Plaintiff, Jenny Joza, is a Hotel employee who filed this lawsuit seeking to recover: (a) $35,186.24 in allegedly unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* relating to the three year period preceding October 4, 2007; and (b) $86,916.16 in allegedly unpaid wages and overtime under Section 190 *et seq.* of the New York Labor Law relating to the six year period preceding October 4, 2007.

A trial took place in October 2009. At trial, it was established that Joza was paid for all regular hours that she was scheduled to work, and all overtime hours that she reported working. The sole issue was whether Joza worked additional overtime that she did not report, and, if so,

whether all or any of the Defendants "suffered or permitted" her to work this extra, unpaid overtime.  As described more fully herein, Joza's claims should be denied because:

(a) Section 190 *et seq.* does not provide a cause of action for allegedly unpaid overtime;

(b) Joza's claims under Section 190 *et seq.* are preempted or otherwise precluded by federal labor law;

(c) Joza did not prove that she worked any additional, unreported overtime hours;

(d) Joza did not prove that Defendants suffered or permitted her to work uncompensated overtime;

(e) Joza did not prove that the individual Defendants are "employers," as that term is defined under the FLSA or under Section 190 *et seq.*; and

(h) Joza did not prove that any alleged violation of the FLSA or Section 190 *et seq.* was willful.

## II.
## FACTUAL BACKGROUND

Prior to filing this lawsuit in 2007, Joza had worked as a Hotel reservationist for more than 20 years and was, at all relevant times, a member of a collective bargaining unit represented by the New York Hotel & Motel Trades Council, AFL-CIO (the "Union").  R. 14/5-9.  The terms and conditions of her employment were governed by a collective bargaining agreement ("CBA") between the Union and the Hotel.[1]  R. 68/11-22 & 114/3-11.  Ex. A.

Joza's work shift began at 8 a.m. and ended at 4 p.m., and pursuant to Hotel policy, she was required to clock in upon arriving at the Hotel, and to clock out when she physically left the Hotel premises.[2]  R. 14/14-16 & 34/9-10.  Ex. B.  Joza was also required to report any overtime hours that she worked on a written "overtime" form that listed her name, the date the overtime

---

[1] Unless otherwise noted, pages of the transcript of the trial testimony and proceeding will be referenced by "R" with pages and lines following and separated by a hash.  Exhibits will be referenced by number or letter.

[2] The time clock was located near the employee entrance.  R. 14/17-19.  The CBA did not require employees to clock out when they took lunch, breaks, or otherwise stopped working if they were still on the Hotel premises.  Ex. A.  Thus, the time clock recorded all time that employees were physically on the premises.  R. 554/16-19.

was worked, the amount of overtime worked, and the reason for working overtime.[3]  R.102/11-18; 131/15-20. Ex. C-F.[4]  Joza admitted that she was aware of the process for reporting overtime, and submitted such forms (or had them submitted for her) on numerous occasions during her employment at the Hotel.[5]  R.102/19-24.  Ex. G.

Joza also admitted that every overtime form ever submitted by her (or on her behalf) to Defendants was signed to authorize payment to her, and that she received overtime pay for every minute of overtime reported by her on such forms.  R.103/10-17; 129/1-9; 200/22-201/1; 203/7-16.  In fact, although she often failed to secure prior authorization, no manager, including any individual Defendant, ever refused or failed to sign an overtime form that was submitted by her or on her behalf.  R.127/14-17; 128/20-22; 129/1-9; 131/2-11.  Joza further admitted that no manager, including any individual Defendant, ever threatened her, told her not to submit overtime forms, or took or threatened to take disciplinary action against her for working overtime or submitting overtime forms.  R. 126/9-15; 127/1-13.  In fact, neither Joza nor any witness who testified on her behalf was aware of any employee who had ever been disciplined,

---

[3] Although the CBA provides for overtime to be paid for hours worked in excess of 35 in a workweek, Joza is not pursuing a claim for overtime pay for hours allegedly worked in excess of 35 per week.  R. 433/5-7.  Rather, she seeks overtime pay for hours allegedly worked in excess of 40 per week.  R. 158/7-17;  433/5-7.

[4] The CBA states that "no employee shall receive overtime pay unless such overtime has been authorized previously by such employee's department or division manager."  Ex. B at Section 11(G)(6).  The Hotel work rules likewise require that any overtime must be authorized in advance (i.e., before it is worked) by a manger.  Ex. B at Section 11(G)(6).  However, the undisputed evidence established that the Hotel allowed employees, including Joza, to submit such overtime forms even after the overtime had been worked, and paid for such belatedly reported overtime work even if it had not been pre-authorized.  R. 436/19-23; 437/2-25.

[5] Until mid 2007, when Joza's sister was terminated, the two sisters frequently submitted overtime forms listing overtime worked by both of them. R. 51/3-9; 132/1-10; 344/23-345/6.  Ex. D, F. This was done with Joza's knowledge and after the sisters consulted about the amounts and reasons to be listed for each of them.  R. 153/23-154/3; 346/9–347/1, 364/20-365/24.

or threatened with discipline, for working overtime or submitting overtime forms.[6]  R. 129/14-22; 249/3-14; 371/3-12; 394/10-19; 460/13-16.

Notwithstanding this clear and specific evidence, Joza testified, at the prompting of her counsel, that she was afraid to submit overtime forms because of the unspecified "culture" at the Hotel and/or because Defendant Pereira had allegedly told her, back in 2004, that "the old man doesn't like to pay overtime."[7]  When pressed, however, Joza acknowledged that Defendant Chiani merely told the departmental managers to watch the overtime, and admitted that there is nothing improper, much less threatening, about Chiani telling the departmental managers to watch the overtime.  R. 126/5-10; 126/14-19.  Chiani likewise testified that he merely told departmental managers to "watch the overtime."  R. 658/8-10.

With respect to whether she actually worked any "extra" overtime beyond that which she actually reported during the seven years in question, Joza offered no journals, records, emails, letters, notes, or other documents to substantiate her claim that she worked such extra overtime.[8]  Moreover, her testimony consisted of simply confirming, at the prompting of her counsel, for each of the seven years in question that: (a) the year was a busy year; (b) she worked through her lunch 3-4 times per week; (c) she worked additional hours of overtime each week before/after her shift; and (d) she was not paid for these extra hours.  R. 22/12-14; 23/7-12; 29/21-24; 34/7-

---

[6] Overtime was not uncommon at the Hotel – particularly in some departments (e.g., housekeeping and food services).  R. 658/8-659/14.  Indeed, Defendant Chiani testified that the Hotel payroll was approximately $12,000,000 per year, and that overtime payments ranged between $150,000 and $200,00 per year.  *Id.*

[7] The "old man" was purportedly a reference to Defendant Chiani. R. 35/3-19.

[8] The only exhibit offered by Joza that addresses her alleged extra overtime hours is a handwritten summary that she prepared and provided to her counsel.  Ex. 14.  It contradicts her claims.  Indeed, on cross-examination, she admitted that only the calculations on the left side of the page pertain to her (the others pertain to her sister), and that the calculations reflect her estimate of the total number of hours she worked **in excess of 35 hours per week** for each of the years in question.  R. 153/22-24; 154/7-25; 156/9-22.  Even assuming that these annual estimates are valid, when they are converted to a weekly average and then added to her scheduled work hours for the year in question, the hours worked by Joza still would **not** exceed 40 per week.  R. 158/3-10; 159/2-6.  Presumably, this is why Joza changed her testimony at trial to claim that her written estimates only reflected her extra "lunch" hours and does not include her extra hours before and after her shift.  This thirteenth hour explanation is not supported by the exhibit and contradicts Joza's prior testimony and discovery responses.  R. 154/20-23; 155/10-156/22.

16; 58/12-18.  She offered no corroborating evidence that she worked these extra overtime hours without receiving compensation,[9] and her testimony was so nebulous and yet repetitive that it had a "rehearsed" quality.  Aside from the obvious questions about how she could possibly recall each year independently,[10] Joza's credibility was undermined by the fact that she refused to vary from her stock answers even when confronted with specific, irrefutable evidence to the contrary. By way of example:

> (a) when questioned about the severe downturn in the hospitality industry following the tragic events of 9/11/01, Joza testified that the hotel was just as busy after 9/11 as it had been before.[11] R. 141/1-13;

> (b) although she begrudgingly admitted that the Hotel was 80% filled with National Guard troops in 2002 and part of 2003, and that most of the remaining 20% was devoted to long-term contracts to house airline crews, Joza still insisted that the reservation department was so busy that she had to work 8-10 hours of overtime each week.[12]  R. 23/1-10; 26/23 – 27/11; 141/22-142/11; 141/1-6;

> (c) although she admitted that she left work 2-3 times per week to attend post-accident physical therapy sessions in 2003, Joza still insisted that she had somehow managed to work 4-8 hours of

---

[9] Joza called her sister and several co-workers or former co-workers who testified that she was a good worker, and that they had personally observed her working during lunch and/or before or after her assigned shift.  R. 229/13-25; 256/14-257/5; 259/3-9; 276/3-22; 277/8-278/5.  However, none of them could, or did, testify that what they observed was actually overtime, much less that Joza did not get paid for the work they observed.

[10] The Court even questioned Joza as to whether she actually recalled that which she was saying she recalled for each year in question, or was instead summarizing her overall recollection of the time period in question. R. 92/13-25.  Seemingly unsure of the "correct" answer to provide, Joza dissembled and failed to answer the simple question directly, or consistently.  R. 93/1 – 96/15.

[11] Other witnesses credibly testified that travel of all kinds, and reservation activity at the Hotel, plummeted following 9/11, and witnesses, including Joza, testified that it took several years for such activity to return to the levels experienced before 9/11.  R. 582/20 – 583/6; 593/7-13.

[12] Other witnesses credibly testified that there was very little reservation activity at the Hotel since the troops did not actually make reservations, and that the presence of the troops financially saved the Hotel during an otherwise difficult time.  R. 584/9-21; 591/14-17; 593/10-13.

overtime each week during that ½ of 2003 that she actually worked.[13] R. 143/13-144/4;

(d) although an entire wing of the Hotel was shut down after a garbage truck had ripped off the fire escape in 2003, Joza still insisted that the reservation department was so busy that she had to work 4-8 hours of overtime each week. R. 143/18 - 144/4;

(e) although several friends and her union representative testified that they ate lunch with Joza almost every day in the Hotel cafeteria until late 2003, Joza insisted that she worked through her lunch hour at her cubicle 4 days a week during the years 2001, 2002 and 2003.[14] R. 117/22-119/16; 161/19-24; 162/10-17; 163/3-18;

(f) although she admits that she heated and ate a meal at her desk, frequently told inquiring co-workers that she was on her lunch break, and diverted the Hotel phones away from her desk while she was eating her lunch, Joza still insisted that she was actually working when she ate lunch at her desk beginning in 2003. R. 36/12-22; 117/20-118/19; 119/1-16; and

(g) although she admitted that the time clock records show that she was not even physically on the premises for more than 40 hours in most weeks of her employment, Joza insisted that she had worked 9.5-16 hours of overtime each week during the years in question.[15] R. 159/2-6.

Although well practiced, Joza's supposed recollection of the reservation activity at the Hotel during the seven years in question, the tasks that she *might have* performed when she allegedly engaged in uncompensated overtime work, and the number of extra overtime hours she

---

[13] Other witnesses testified that reservation activity at the Hotel was still down considerably in 2003; thereby making it possible to have accommodated Joza's absence for ½ year, and Joza's essentially part-time work for the remainder of that year. R. 589/9-24; 593/7-13; 593/22-594/2.

[14] Joza testified that she had a falling out with these former friends sometime back in 2001. R. 162/9-17. However, the friends testified that the falling out did not occur until 2004, and their testimony is supported by the fact that Sabina Garelli was in Joza's car in 2003 when they were involved in a serious car accident. R. 329/20-21; 595/18-596/2; 588/5-589/8.

[15] The time clock records and payroll records were introduced into evidence, and they show the total time that Joza was physically present on the premises of the Hotel each day and each week, and the payments made to Joza. Exs. G-S. As demonstrated in the summaries that were also introduced into evidence, Joza was rarely on the Hotel premises for as much as 40 hours in any given week. Exs. T-Y. Notably, Joza sought to deflect the import of these records by changing her testimony. In particular, whereas Joza had testified before trial that she routinely clocked in before starting her work day, she testified at trial that she actually worked "off-the-clock" before her shift began. R. 122/23-123/3.

allegedly worked each year was simply not credible.  Moreover, it was belied by specific, undisputed evidence concerning the Hotel's operations and reservation activity, as well as Joza's own condition and workplace activities, during the years in question.

With respect to whether any of the Defendants knew, or had any reason to know, about her alleged extra overtime work, Joza admitted that she never submitted an overtime form for any of this overtime, and did not otherwise inform any of the Defendants that she had worked any extra overtime.[16]   R. 67/12-14; 203/7-16.   She also admitted that she never initiated a complaint or grievance under the CBA with respect to not being paid for any overtime work,[17] or otherwise complained to Defendants about not being paid for any extra overtime work. R. 68/11-19; 183/17-19.   In fact, she offered no evidence that any of the Defendants actually knew about her extra overtime.   Rather, she testified that some of the Defendants sometimes walked past her cubicle while she was eating lunch, or while she was there after her shift had ended, and she now argues that those Defendants must have discerned that she was working overtime.[18]  R. 38/3-16; 80/8-16; 118/20-25.

The Defendants[19] all testified that the Hotel policy was to pay overtime compensation to any employee who worked overtime, even if the overtime had not been pre-authorized.

---

[16] Joza only hesitated in answering this question with respect to Defendant Pereira; stating that he could see that she was working overtime.  However, when forced by the Court to answer as to whether she had ever informed Pereira or Gilbert of any alleged extra overtime, Joza begrudgingly admitted that she could not recall ever doing so. R. 56/4-9; 106/17-22.

[17] Section 26 of the CBA contains grievance procedures that are to be used to resolve disputes between the Hotel and employees who are members of the collective bargaining unit.  Ex. A.  That clause applies to "[a]ll complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this agreement or any acts, conduct or relations between the parties, directly or indirectly. . . ." (emphasis added).  Additionally, Section 11(G) of the CBA, entitled "Overtime," includes a provision calling for "expedited arbitration before the Office of the Impartial Chairman" in the event of a dispute concerning overtime issues.  Ex. A.

[18] Joza offered no evidence, or opinion, as to how the Defendants would have distinguished between reported overtime and extra, unreported overtime if, in fact, they had noticed her working through lunch or after her shift.

[19] The individual Defendants are all former Hotel managers, but only Pereira and Santucci actually supervised Joza directly.  Chiani was the General Manager.  Birmingham was the HR Manager, and never supervised Joza.

R. 436/19-23. They further testified that overtime is paid on the basis of the overtime forms that employees complete and submit, that department mangers review and compare the weekly time clock reports to the overtime forms submitted for that week, and inquire of any employee shown to have been on the Hotel premises longer than their scheduled work hours without having submitted an overtime form for that extra time – so as to verify whether the employee worked overtime. R. 555/11-20; 599/1-16; 601/13-602/1.2; 615/12-18; 621/12-17. Defendants Pereira and Santucci specifically testified that they had made such inquiries of Joza directly when they were her supervisor, and that they had her complete an overtime form on those occasions when she indicated that she had worked overtime.[20] R. 599/1.21-600/1.5; 621/1.18-622/1.2.

The Defendants also testified that Joza did not have a designated lunch hour, and that she was to take her lunch hour break as convenient during an approximately 3 hour window. R. 644/6-9. They testified that they periodically saw Joza eating lunch – either with her group of friends in the Hotel cafeteria until sometime in 2003, or at her desk (sometimes with her sister) after she ceased eating lunch with her friends in the Hotel cafeteria. R. 595/8-22; 603/3-10; 631/21-632/3; 632/16-18; 657/8-12. They testified that they never observed Joza to be working while eating lunch; and were unaware of Joza having ever worked any overtime – either during lunch or before or after her shift – for which she was not paid. R. 624/21-625/6.[21]

---

[20] They further testified that Joza frequently indicated that she had not worked overtime, and that she would offer explanations that ranged from having failed to clock out when she left for a doctor's appointment to being on site (not working but not yet clocked out) while waiting to ride home with her son and/or her sister.

[21] Joza submitted, and was paid, overtime in 8 weeks during 2007, 7 weeks during 2006, and 18 weeks during 2005. R. 153/3-12. Exs. M-O & T-V. Often, Joza's stated reason, on her overtime forms, for this reported overtime was that she had worked through lunch or after hours. R. 118/18-19; 165/13-19; 166/12-18; 187/10-11.

## III.
## ARGUMENT AND AUTHORITIES

A.      **NYLL Article 6 does not authorize Joza's wage and overtime claims.**

According to both her Complaint, and the Joint Pre-Trial Order, Joza seeks to "recover" what she refers to as "unpaid wages and overtime compensation" under Section 190 *et seq.* (i.e., Article 6) of the NYLL.[22]  To be clear, the only "wages" that Joza claims to have not been paid to her are wages to compensate her for her alleged extra, unreported, overtime work.

Article 6 contains substantive provisions that address: (a) the frequency of wage payment (Section 191); (b) the payment of sales commissions (Sections 191-B & 191-C); (c) the payment of wages in cash versus direct deposit (Section 192); (d) the making of deductions from wages (Section 193); (e) sex-based wage differentials (Section 194); (f) employee gratuities (Section 196-D); and (g) kickbacks.  It also provides for various penalties and remedies against employers who violate its substantive provisions (Sections 197 - 198-A).[23]  For purposes of this lawsuit, there are two important legal principles that are applicable to claims that are brought under Article 6.

First, and as discussed more fully in the preemption discussion below, wage claims brought under Article 6 must be based upon an *enforceable contract right to such wages*.  *See, e.g., Zaitsev v. Saloman Brothers, Inc.*, 60 F.3d 1001, 1004 (2d Cir 1995) (dismissing claim for wages brought under Section 190 *et seq.* because of lack of proof of enforceable contract right to such wages), citing *Tierney v. Capricorn Investors, L.P.*, 189 A.2d 629, 632, 532 N.Y.S.2d 700, 703 (1st Dept.) *appeal denied*, 599 N.Y.S.2d 804 (1993) ("the plaintiff cannot assert a statutory

---

[22] The citation to Section 190 *et seq.* can fairly be read as a reference to the entire sequence of statutory provisions that make up Article 6.  It cannot fairly be read as a reference to the entirety of the New York Labor Laws.

[23] The remaining provisions are either definitional (Section 190 & Section 191-A), address notice, posting and record keeping requirements (Sections 195 & 198-D) or address the powers and duties of, and interactions with, the commissioner (Sections 196, 196-A, 199 & 199-A).

claim to wages under the Labor Law if he has no enforceable contractual right to those wages). Absent proof that a claim for wages under Section 190 *et seq.* is premised upon an enforceable contract, the statute does not authorize such claims, and they must be dismissed. *Id. See also Firtell v. Update, Inc.*, 851 N.Y.S.2d 57 (Sup. 2007) (dismissing claim for wages brought under Section 190 *et seq.* because of lack of proof of enforceable contract right to such wages).

Second, even when there exists a contractual basis for a plaintiff's claimed wages, Section 190 *et seq.* is limited in scope and only "provides remedies for substantive violations of" Article 6. *Kaplan v. Aspen Knolls Corp.*, 290 F.Supp.2d 335, 339 (E.D.N.Y. 2003); *Kettler v. Fleming,* 820 N.Y.S.2d 348 (3rd Dept. 2006); *Gallegos v. The Brandeis School*, 189 F.R.D. 256, 259 (E.D.N.Y. 1999) (citations omitted). Persons who are "otherwise unprotected by the substantive wage laws of Labor Law article 6' may not assert a claim under Section 198." *Id.* at 259 (citations omitted).

At issue in *Gallegos* was a motion for leave to amend to assert a claim for allegedly unpaid wages and overtime under Section 190 *et seq.*; which the district court denied on grounds of futility. *Id.* Other cases have likewise recognized that Section 190 *et seq.* does not authorize claims, or provide any remedy, for the alleged failure to pay wages or overtime compensation for overtime work. *See, e.g.*, *O'Rourke v. Carmen M. Pariso, Inc.*, 501 F. Supp. 2d 445, 448 & n.2 (W.D. N.Y. 2007) (dismissing the lawsuit on grounds of federal preemption, but specifically noting "[a]lthough Plaintiffs assert [Section] 190 as a basis for their [cause of action] which includes the overtime pay demand, the requirement for time and on-half for overtime compensation derives from [Section] 650[.]"); *see also Zheng v. Liberty Apparel Co., Inc.,* 355 F.3d 61, 78 (2d Cir. 2003) (holding that overtime claims may be brought pursuant to Section 650 *et seq.* and 12 N.Y.C.R.R. 142-2.2, and distinguishing claims brought under Section 190 *et seq.*);

10

*Jara v. Strong Steel Door, Inc.*, 20 Misc. 3d 1135(A), 872 N.Y.S.2d 691, 2008 WL 3823769 (Sup. 2008) (same).[24]

Aside from the threshold question of whether Joza's claims are premised upon an enforceable contract right,[25] a review of Section 190 *et seq.* reveals that it simply does not authorize or provide any basis for Joza's claims for wages for any extra overtime she allegedly worked. Rather, the substantive provisions relate to the frequency of wage payment (Section 191), the payment of sales commissions (Sections 191-B & 191-C), the payment of wages in cash versus via direct deposit (Section 192), the making of deductions from wages (Section 193), sex-based wage differentials (Section 194), the payment of employee gratuities (Section 196-D), and wage kickbacks.

Finally, it should be noted that Joza has insisted on pursuing her state law claims under only Section 190 *et seq.*– even after Defendants objected that the statute does not authorize such claims – and that Joza deliberately chose not to seek leave to amend her complaint to pursue claims under Section 650 *et seq.* and 12 N.Y.C.R.R. 142-2.2 – even after that statute and regulation were identified by Defendants. In reliance upon Plaintiff's stance, Defendants did not make any effort to prepare a defense to other possible claims, and Joza should not be permitted to now argue that her state law claims are brought under anything other than Section 190 *et seq.*

---

[24] As explained in *Diaz v. Electronic Boutique of America, Inc.*, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. 2005), the absence of any statute that actually requires that overtime compensation be paid has led some courts to conclude that such claims are not cognizable under New York law. Id. at *29-30. However, most courts now accept that such claims are cognizable under Section 650 *et seq.* and 12 N.Y.C.R.R. 142-2.2. *Id.* In particular, Section 655(5)(B) authorized the New York State Minimum Wage Board to recommend that the State Commission of Labor promulgate overtime rate regulations. *See, e.g., Edwards v. Jet Blue Airways Corp.*, 852 N.Y.S.2d 724, 727 (Sup. 2008). After the Wage Board made such a recommendation, the Commissioner of Labor enacted 12 N.Y.C.R.R. 142-2.2; which requires overtime compensation for hours worked in excess of 40 in a week. *Id.* These regulations are recognized as being are enforceable in an action brought under Section 650 *et seq. See Diaz, supra* at *30. *See also Noble v. University Place Corp.*, 224 F.R.D. 330 & n. 85 (S.D.N.Y. 2004).

[25] In an effort to avoid preemption, Joza argues that her state law claims are not based upon a contract. This would, of course, mean that her claims are not cognizable under Section 190 *et. seq. Zaitsev, supra* at 60 F.3d 1004.

**B.      Joza's state law claims are preempted.**

To the extent that Section 190 *et seq.* does authorize Joza's state law claims, they are nevertheless preempted by federal labor law because they relate to the CBA, and Joza failed to first submit those claims to the CBA's grievance procedures.  *See* § 301 LMRA, 29 U.S.C. § 185.  *See Tran v. Tran*, 860 F.Supp. 91 (S.D. N.Y. 1993), *affirmed in relevant part*, 54 F.3d 115, 118 (2d Cir. 1995).   In *Tran*, the district court noted that federal labor law "requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by an employer and the union as the mode of redress." *Id.* at 95 (emphasis in original).  In particular, the district court explained:

> absent a showing that the aggrieved employee has attempted to resort to grievance and arbitration procedures as provided by a collective bargaining agreement, **the employee is precluded from instituting a suit in federal court to recover pay and other damages arising out of disputes covered by the agreement**.

*Id.* at 95 (emphasis added); citing *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

The district court found that the wage and overtime claims "either 'directly or indirectly' arise out of the 'acts, conduct or relations between' plaintiff and defendants or involve the 'application of [a] clause' contained in the CBA." *Id.*  Thus, the district court concluded that the claims were pre-empted, and should be dismissed.  *Id.* at 94.  Although assailed by Joza and her counsel, *Tran* is controlling precedent for purposes of this case because: (a) both Joza and the plaintiff in *Tran* are hotel employees who filed a lawsuit seeking to recover straight and overtime wages under Section 190 *et seq.*[26]; (b) both Joza and the plaintiff in *Tran* were covered by the CBA between the Union and the member hotels of the New York Hotel Association (the

---

[26] The district court in *Tran* did not address whether Section 190 *et seq.* encompasses wage/overtime claims.

"Association");[27] (c) both Joza and the plaintiff in *Tran* failed to "attempt to grieve or seek to arbitrate [their] disputes with defendants as required" by the CBA; and (d) the Second Circuit affirmed the district court's conclusion that the state law claims brought by the *Tran* plaintiff were pre-empted, and should be dismissed.[28]

Although *Tran* is the only case in which the Second Circuit has been called upon to address this issue with respect claims brought under Section 190 *et seq.* (not to mention with respect to the same CBA that is at issue in this case), other federal district courts in this circuit have reached the same conclusion. For instance, in *Vera v. Saks & Co.,* 218 F.Supp.2d 490 (S.D. N.Y. 2002), *affirmed*, 335 F.3d 109 (2nd Cir. 2003), a department store employee filed a lawsuit seeking to recover wages that were allegedly due under Section 190 *et seq.* Like Joza, and the plaintiff in *Tran*, the plaintiff in *Vera* had not initiated any complaint or grievance under the CBA between his employer and his union. *Id*. at 492. In dismissing the lawsuit, the district court held that the plaintiff's claims were pre-empted by federal labor law because "the action necessarily implicates a collective bargaining agreement." *Id*. at 493-95. In doing so, the district court stated:

> [b]ecause the plaintiff's claims for additional compensation fall squarely within the scope of the broad grievance and arbitration procedure, and the plaintiff failed to use that dispute resolution procedure, the plaintiff's claims must be dismissed.

*Id*. at 494.

The district court cited to the *Tran* opinion, and noted that it had been affirmed, in relevant part, on appeal. *Id*. The district court also stated that its dismissal of the plaintiff's

---

[27] Most hotels in the greater New York area are members of the Association; which negotiates the terms of the CBA with the Union. The individual member hotels then sign off on the CBA. R. 420/23-422/17.

[28] Notably, in the same opinion in which it affirmed the district court's dismissal of the *Tran* plaintiff's state law claims, the Second Circuit reversed the district court conclusion that the *Tran* plaintiff's FLSA claims were pre-empted. *Id*.

claims is "consistent with the holdings of other courts of appeals which have similarly held that claims for violations of state labor laws that were encompassed by the terms of grievance provisions of collective bargaining agreements were required to be arbitrated and that lawsuits alleging such violations should be dismissed."   *Id.*, *citing Atchley v. Heritage Cablevision Associates*, 101 F.3d 495, 501-02 (7th Cir. 1996) (alleged violation of Indiana wage payment law); *Wheeler v. Grayco Trucking Corp.*, 985 F.2d 108 (3d Cir. 1993) (claim under Pennsylvania wage payment and collection law).

More recently, in *Flores v. The Pinnacle Group, et al.*, 2007 U.S. Dist. Lexis 18394 (S.D. N.Y. 2007), the plaintiff asserted claims against his employer that included a claim for allegedly unpaid overtime wages under Section 191 of the New York Labor Law.[29]   Like Joza, Flores was a member of a collective bargaining unit, but he "did not grieve the issue before his union as required by the CBA."   *Id.*   In granting summary judgment to the defendant and dismissing the plaintiff's claims, the district court stated:

> [t]his claim fails because 'individual employees wishing to assert contract grievances [in federal court] must attempt use of contract grievance procedure agreed upon by employer and union as the mode of redress . . . .'

*Id.*

For the reasons discussed in the *Tran*, *Vera*, and *Flores* opinions, Joza's state law claims are preempted by federal labor law, and must be dismissed.   To paraphrase the opinion of the district court in *Tran,* Joza's state law claims for wages concerns alleged "acts, conduct or relations between the parties" to the CBA, and involve the "application" of various "clause[s] of" the CBA to the parties and their actions.

---

[29] Like Joza and the *Tran* plaintiff, the plaintiff in *Flores* was confused as to whether Section 190 *et seq.* provides a basis for overtime claims.  Section 191 specifically addresses the frequency of wage payment.

Joza tries to distance herself from *Tran* and its progeny in two ways. To avoid preemption, she first argues that her claims under Section 190 *et seq.* are not based upon the CBA or any other contract, and are, instead, based upon some other unspecified right or entitlement to be paid overtime compensation.[30]  *C.f. Ellis v. HarperCollins Publishing*, 2000 U.S. Dist. LEXIS 8598 (S.D.N.Y. 2000) (claim under Section 190 *et seq.* is preempted if alleged contract relates to CBA). In fact, of course, the substantive resolution of Joza's state law necessarily requires an analysis of the CBA; not merely to establish Joza's wage rate, but also to consider and address the applicability and enforceability of the overtime provisions of the CBA, and to determine the Hotel's right to require employees to follow overtime reporting procedures. *See, e.g., Vera, supra* at 335 F.3d 115 & n.1.[31]

However, even if Joza is correct in asserting that her claims are not contractually-based, then they fail as a matter of law because claims brought under Section 190 *et seq.* must be based upon an enforceable contract right. *See, e.g., Zaitsev, supra* at 60 F.3d 1004 (dismissing claim for wages brought under NYLL Section 190 *et seq.* because of lack of proof of enforceable contract right to such wages); *Tierney, supra* at 532 N.Y.S.2d 703 ("the plaintiff cannot assert a statutory claim to wages under the Labor Law if he has no enforceable contractual right to those wages"); *Firtell, supra* at 851 N.Y.S.2d 57 (dismissing claim for wages brought under Section

---

[30] Joza does not, and cannot, allege that any contract other than the CBA entitles her to the allegedly unpaid wages she is now seeking. Because she was a member of the collective bargaining unit covered by the CBA, any claim based upon another contract would be preempted. Not surprisingly, Joza's pleadings have never articulated the *source* of her alleged entitlement to the wages she seeks to recover under Section 190 *et seq.*; and her evidentiary presentation at trial failed to address the *source* of her entitlement to such wages under state law. This failure of proof is ultimately fatal to her Section 190 *et seq.* claims.

[31] For instance, the CBA provides that "[n]o employee shall receive overtime pay unless such overtime work has been authorized previously by such employee's department or division manager." Ex. A at p. 11. Given Joza's admission that the alleged overtime work at issue in this lawsuit was not "previously authorized," the CBA expressly precludes her from receiving the very wages that she is seeking to recover under Section 190 *et seq.* The fact that there may be questions about the enforceability of such a collectively bargained contract clause only underscores the fact that resolution of Joza's state law claims necessarily requires, and is dependent upon, an analysis of the CBA.

15

190 *et seq.* because of lack of proof of enforceable contract right to such wages).  The irony, of course, is that the very argument that Joza makes to try to avoid preemption establishes, as a matter of law, that her state law claims are not cognizable.

Joza also cites to and relies upon *Mascol v. E & L. Transp., Inc.*, 387 F.Supp.2d 87, 98 (E.D.N.Y. 2005) to support her argument that her state law claims are not preempted.  However, *Mascol* is not persuasive, much less controlling, precedent in this case.[32]  The district court in *Mascol* correctly cited *Tran* for the proposition that a plaintiff who is covered by a collective bargaining agreement may nevertheless "pursue his individual statutory rights under the FLSA." *Id*.  However, the district court went on to apply that rationale to *both* the FLSA claims and the state law claims at issue in the lawsuit.  In doing so, the district court failed to recognize that the Second Circuit had actually distinguished between FLSA claims (not preempted) and state law claims (preempted) in its *Tran* opinion.  Consequently, the district court made no effort to reconcile its ruling concerning the state law claims with the treatment of such claims by the district court and the Second Circuit in *Tran*.[33]

With all due respect, if there exists a conflict between *Mascol* and *Tran*, the latter obviously reflects the considered judgment of the Second Circuit, and is more closely analogous to this case since it involved a hotel employee who was covered by essentially the same CBA that is at issue herein, and who was pursuing the very same state law claims that are being pursued by Joza.[34]  Thus, *Tran* and its progeny are the controlling precedent in this case.

---

[32] Notably, the *Mascol* plaintiff did not bring her state law claims under Section 190 *et seq.*  That is a potentially significant distinction because claims brought under Section 190 *et seq.* must, *inter alia*, be based upon an enforceable contract right.  *Zaitsev, supra* at 60 F.3d 1004; *Tierney, supra* at 532 N.Y.S.2d 703; *Firtell, supra* at 851 N.Y.S.2d 57.

[33] The district court in *Wright v. Brae Burn Country Club, Inc.*, 2009 U.S. Dist. LEXIS 26492 (S.D.N.Y. 2009) likewise cited *Tran* without discussing, or perhaps realizing, that the state law claims at issue in *Tran* were actually found to be preempted.

[34] The United States Supreme Court recently revisited the question of whether a collective bargaining agreement can preempt even federal statutory claims.  The Court specifically considered a case in which a district court had denied

16

## C. Joza has failed to prove her FLSA claims.[35]

At trial, Joza bore the "burden of proving that [her] employer did not compensate [her] for completed [overtime] work."[36] *Grochowski v. Phoenix Construction*, 318 F.3d 80, 87 (2d Cir. 2003).[37] "Work," in this context, is defined as "physical or mental exertion . . . **controlled or required by the employer** and pursued necessarily and primarily for the benefit of the employer and his business." *Reich v. New York City Transit Authority*, 45 F.3d 646, 651 (2d Cir. 1995) (emphasis added); *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 523 (2d. Cir. 1998) (explaining that "an employee may perform a task that seems reasonable . . . but which the employer neither required nor controlled, and for which therefore the employee is not entitled to be paid."). And, because liability is only imposed upon employers who suffer or permit employees to work uncompensated overtime, Joza was obligated to prove that Defendants "had knowledge, actual or constructive, that she was working" such overtime hours without compensation. *Id.* at 145 F.3d 524 ("an employer cannot suffer or permit an employee to perform services about which the employer knows nothing").[38] Moreover, if the evidence

---

a motion to compel arbitration, and the Second Circuit had affirmed that denial. *14 Penn Plaza LLC v. Pyett*, ___ U.S. ___; 129 S. Ct. 1456 (April 1, 2009). In reversing and remanding the case, the Supreme Court explained that its precedents had been misinterpreted to preclude preemption and/or enforcement of a collective bargaining agreement's grievance procedures. Although it does not address the question of preemption of state law, *Pyett* is notable because it reflects a broadening of the doctrine of preemption.

[35] To the extent that Joza has valid state law claims, and those state law claims are not preempted, then they generally consist of the same elements and are subject to the same burden of proof found under the FLSA. *See Grochowski v. Phoenix Construction*, 318 F.3d 80, 87 (2d Cir. 2003); *see also Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61, 78 (2d Cir. 2003). The one exception is with respect to the scope of the term "employer," which, as discussed below, is defined far more broadly in the FLSA than it is in NYLL Section 190.

[36] The FLSA requires employers to pay overtime to all non-exempt employees who are employed to work more than forty (40) hours in a workweek. 29 U.S.C. § 207(a)(1).

[37] See also *Harvill v. Westward Commc'ns LLC*, 311 F.Supp. 2d, 573, 583 (E.D. Tex. 2004), *affirmed* 433 F.3d 428 (5th Cir. 2005) (Plaintiff must "prove with 'definite and certain evidence' that she was not properly compensated for work performed."); citing *Reeves v. Int'l Tel. and Teletype Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980), cert. denied, 449 U.S. 1077 (1981).

[38] *See also Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995); *Harvill v. Westward Communications LLC*, 311 F.Supp.2d 573, 583 (E.D. Tex. 2004); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.1981) (explaining that knowledge affords employer the opportunity to comply with the Act); *Reich v.*

showed that Joza "fail[ed] to notify" Defendants or "deliberately prevent[ed]" Defendants from "acquiring knowledge of the overtime worked, the 'failure to pay for the overtime hours is not a violation' of the FLSA." *Newton, supra* at 47 F.3d 748; *Harvill, supra* at 311 F.Supp.2d 583; *see also Seever v. Carrols Corp.*, 528 F.Supp.2d 159, 166 (W.D.N.Y. 2007).

Finally, in addition to proving that she performed overtime "work" for which she was not compensated, and that her employer "had knowledge, actual or constructive," of that fact, Joza was required to produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Grochowski, supra* at 87-88; *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58 (2d Cir.1997); *Broad v. Boeing Manufactured Housing, Inc.*, 681 F.Supp. 1224, 1227 (W.D. Tex. 1987). Only then did Defendants have any obligation to "come forward with evidence" of either the amount of work performed or "evidence to negate the reasonableness of the inference to be drawn from [Joza's] *prima facie* case." *Reich, supra* at 121 F.3d 66-67. Moreover, evidence that "the hours claimed to have been worked tended to be exaggerated" by Joza is sufficient to "negate the reasonableness of the inference to be drawn from [her] *prima facie* case." *Broad*, 681 F.Supp. at 1227. Also, the "just and reasonable inference" is negated by evidence that Joza was paid for reported overtime work, and failed to prove that she was prevented her from reporting and getting paid for additional overtime work. *Seever*, 528 F.Supp.2d at 166.

Joza did not prove that she performed any extra overtime "work" for which she was not compensated, much less that Defendants knew or should have known about her extra overtime work. On the contrary, in fact, the evidence established that Joza failed to notify Defendants about, and prevented Defendants from acquiring knowledge of, her alleged extra overtime work.

---

*Department of Conservation & Natural Resources*, 28 F. 3d 1076, 1082 (11th Cir. 1996); *Davis v. Food Lion*, 792 F.2d 1274, 1276-77 (4th Cir. 1986). *See also* 29 C.F.R. Section 785.12 (requiring proof of employer knowledge before liability attaches).

Also, Joza failed to introduce evidence "sufficient to show the amount and extent of [her alleged extra overtime] work as a matter of just and reasonable inference."  Rather, she offered only her own testimonial estimates, and the evidence clearly showed that the hours she "claimed" to have worked were grossly "exaggerated," had no factual basis, and were belied by credible evidence – including her own overtime forms, and her initial, handwritten estimates of the hours worked in excess of 35.  The evidence further established that Joza was paid for all overtime work she actually reported, and was never prevented from reporting and being paid for extra overtime work beyond that which she reported.

i.   ***Joza failed to prove that she engaged in overtime "work" for which she was not compensated.***

Joza's claim that she worked "extra" overtime hours beyond those which she reported on her overtime forms (and for which she was paid) is supported only by her own vague testimony about working, and sometimes not being paid for working, through her lunch period and before/after her shift.[39]  In *Seever*, the district court faced a similar evidentiary record, and concluded that the plaintiffs' "nebulous" and "uncorroborated" recollections – in the face of the undisputed evidence that the plaintiffs had been paid for every hour of overtime that they had reported – were insufficient to establish that they had engaged in any uncompensated "work." *Id.* at 528 F.Supp.2d 169-70.  This Court could easily conclude that Joza similarly failed to prove that she engaged in any "work" during her lunch or outside of her assigned shifts other than that which she reported on her overtime forms and which was paid to her in full.

However, even if one were to assume that Joza did expend some *extra* "physical or mental exertion" beyond that which she reported on her overtime forms, there was absolutely no

---

[39] Again, it was established that Joza sometimes worked through lunch or after her shift, and then reported this overtime and got paid in full for working this reported overtime.  Notably, Joza never explained how any of the Defendants, or her co-workers, were supposed to distinguish between her reported overtime work and her unreported overtime work.

evidence that her efforts were "controlled or required" by Defendants; much less "pursued necessarily and primarily for the benefit" of the Hotel.  *See Reich, supra* at 45 F.3d 651; *Holzapfel, supra* at 145 F.3d 523.  On the contrary, in fact, Joza admitted that the alleged extra overtime was worked at her own discretion, without informing Defendants, and that the tasks she performed were tasks that could, and would, have been performed by other reservationists, or even by herself the following day, if she had left them.  R. 111/12-19, 115/3-16.  She further explained that she performed these extra tasks because it was in her "nature" to do so; not because she had been required, told or asked to do so by Defendants, and not because there was some urgent and compelling business need to do so immediately.[40]  R. 18/10-18; 70/2-10.

Even assuming, *arguendo*, that Joza performed these extra overtime tasks, her own testimony establishes that she did so for personal reasons (i.e., to fulfill her "nature" to do so) and not because it was "controlled or required" by Defendants and "pursued necessarily and primarily for the benefit of the employer and his business."  *Id*.  Regardless of whether Joza's unilateral decision to perform such extra tasks was "reasonable," the fact is that it was not "necessarily and primarily pursued" for the Hotel, and it was "neither required nor controlled" by Defendants.  Thus, she is "not entitled to be paid" overtime compensation for her alleged extra services.  *Holzapfel, supra* at 145 F.3d 523.  Simply put, her alleged extra overtime activities cannot, and do not, constitute "work" for purposes of the FLSA.  *Id*.

ii.   ***Joza failed to prove that Defendants knew or should have known that she had worked extra overtime hours without compensation.***

As to whether Defendants knew or should have known that Joza had worked extra overtime hours without compensation, the evidence established that the submission of overtime forms was the procedure by which Hotel employees were to report overtime work and claim

---

[40] In fact, she admitted that on those occasions when she was asked or required to work overtime, her supervisor would immediately fill out an overtime form for her.  R. 102/11-24; 103/5-8; 134/1-6.

overtime compensation, and that Joza omitted such work from her overtime forms, and never informed any of the Defendants that she had worked extra overtime hours beyond that which she reported.  R. 102/19-104/7; 599/8-600.

In the seminal case of *Forrester v. Roth's IGA Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981), the district court considered, and rejected, the claim of an employee who alleged that he had worked overtime for which he had not been compensated.  *Id.*  In affirming the district court's judgment, the Court of Appeals noted that the employee – like Joza in this case – was aware that overtime was supposed to be reported, and that the employer "regularly paid for such reported overtime."  *Id.* at 414.  The Court of Appeals further noted that the employee had regularly submitted such overtime forms and had been "paid for all of the overtime he reported;" and had not mentioned any allegedly "unpaid overtime work to any store official prior to filing his complaint."  *Id.*  Thus, in reviewing the employer's statutory obligation to pay overtime, the Court of Appeals explained:

> [a]n employer must have an opportunity to comply with the provisions of the FLSA.  This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation. However, where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of [§] 207(a).

*Id.* at 414-15.

The Second Circuit has not addressed this issue directly, but has twice cited with approval to the *Forrester* opinion for the proposition that "[f]or compensation to be awarded, plaintiff's activities must not only satisfy the above definition of work, but must also be performed with the employer's knowledge."  *Holzapfel, supra* at 145 F.3d 524; *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d. Cir. 2008).  Other federal appellate courts have more directly addressed the issue, and have reached the same conclusion as in *Forrester*.

21

For instance, in *Newton v. City of Henderson*, 47 F.3d 746 (5th Cir. 1995), the Court of Appeals reversed a summary judgment for the employee, and rendered judgment for the employer, in a case concerning alleged additional uncompensated overtime worked by a police officer assigned to a Task Force.[41]   In doing so, the Court of Appeals noted that the employee was aware of the policy requiring that overtime be authorized, and the payroll form used to report overtime hours worked, but never sought such authorization and never reported the alleged extra overtime for which he was seeking compensation.  *Id.* at 749 (explaining that "Newton ignored these procedures.").  The Court of Appeals also considered, and rejected, the argument that the employee's supervisors should have known that he was working extra overtime hours because they had access to the Task Force's activities and records.  In holding, as a matter of law, that "such 'access' to information does not constitute constructive knowledge," the Court of Appeals stated:

> [i]f we were to hold that the city had constructive knowledge that Newton was working overtime because Freeman had the ability to investigate whether or not Newton was truthfully filling out the City's payroll forms, we would essentially be stating that the City did not have the right to require an employee to adhere to its procedures for claiming overtime.

*Id.* at 749.[42]

Numerous district courts have reached similar conclusions.  One of the more noteworthy is *Seever, supra*; in which the district court dismissed claims for alleged extra, unreported, overtime.  *Id.* at 528 F.Supp.2d 166, 169-170.  In addition to finding that the employees had

---

[41]  The officer was authorized to work 12.5 hours of overtime every 2 weeks, and generally reported, and got paid for, working those hours.  *Id.* at 747.  The lawsuit concerned alleged "additional hours" of overtime work.

[42]  *See also Davis, supra* at 792 F.2d 1276-78 (4th Cir. 1986) (rejecting overtime claim of employee who failed to report alleged overtime); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1999) ("Plaintiff admitted that he was paid for the overtime hours he included on his time sheet, and that uncompensated time was the result of his failure to adequately record his time."  Such failure to record claimed time is fatal to a later claim for such, if the company has no reason to be aware of the overtime."); *Brumbelow v. Quality Mills, Inc.*, 462 F. 2d 1324, 1327 (5th Cir. 1972) (applying estoppel principles to reject the overtime claim of an employee who had failed to report the alleged additional overtime on the time forms that she had submitted).

failed to prove that they actually engaged in any uncompensated "work," the district court noted that the employees had been paid overtime for all of the overtime hours actually reported by them, and that any alleged inaccuracies in the employer's records were "solely due to the [employee's] deliberate failure to accurately report the time they worked," *Id.*; citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). The district court further explained that allowing such claims under such circumstances would mean that "any plaintiff wishing to take advantage of the lesser burden of proof [in *Mt. Clemens*]…need do nothing more than fabricate an admission that he 'lied' on his time records, thereby rendering the employer's FLSA-compliant records useless and the employer, through no fault of its own, defenseless to refute the employee's 'recollection.'" *Id.* The district court was rightfully unwilling to interpret the FLSA in a manner that so rewarded employees who simply fail to report overtime when they had a reasonable opportunity to do so, and then later file a lawsuit seeking to be compensated for such unreported overtime. *Id.* That principle should apply with equal force in this case.

If anything, the circumstances of this case are more egregious than in the many "unreported overtime" cases that are cited above. Like in the case cited above, Joza was paid for every minute of time, including overtime, that she actually reported; and her claims concern extra overtime work that she allegedly performed but failed to report and/or deliberately chose not to report.[43] What makes Joza's conduct even more egregious, however, is that pursuant to Hotel policy, her managers reviewed the weekly time clock records, and inquired of her when it appeared that she had been on site for longer than her scheduled work hours. R.555/11-20; 556/1-12; 586/8-12. On those occasions when Joza reported that she had worked overtime, her

---

[43] Although the FLSA obligates employers to maintain appropriate overtime records, it is well-established that employers may require employees to follow and adhere to reasonable procedures for reporting overtime worked, and may rely upon what employees report, and do not report. *See, e.g., Newton, supra* at 47 F.3d 749; *Davis, supra* at 792 F.2d 1276-78; *McKnight, supra* at 149 F.3d 1130.

supervisors made certain that an overtime form was submitted on her behalf, and she was paid. R. 556/13-24.  On those occasions when Joza said that she had not worked overtime (and offered explanations ranging from having failed to clock out when she left for a doctor's appointment to having been on site waiting for a ride), her supervisors and the Hotel relied upon her response, and her failure to submit an overtime form, in not paying her any overtime.[44]  R. 587/22-25; 601/13-602/2.

As the Ninth Circuit first explained nearly thirty years ago in *Forrester*, an employer "must have an opportunity to comply with the provisions of the FLSA," and "where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of" the FLSA's overtime requirements.  *Id.* at 646 F.2d 414-15.  In this case, Defendants had no knowledge of Joza's alleged extra overtime work, and Joza herself prevented Defendants from learning about her alleged extra overtime work.

In the face of this long line of so-called "unreported overtime" cases, Joza argues that the Defendants should have known that she was misrepresenting her overtime hours worked on her overtime forms, and that she was, in fact, working extra, unreported, overtime hours.  In particular, Joza suggests that Defendants should have intuited as much because they periodically passed by her cubicle and should have noticed that she was there during her usual lunch hour and outside of her assigned shift.  She also suggests that the fact that her weekly time records sometimes showed her to have been on the Hotel premises for more than 40 hours in some weeks, even though she was scheduled to work 35 hours, should have informed Defendants that

---

[44] Neither Joza nor any of her witnesses, including her sister who also worked in the department, disputed that her managers inquired of her when the weekly time clock records indicated that she had been on site for longer than her scheduled work hours.  Additionally, the anecdotal evidence, including one time sheet bearing Defendant Santucci's notations, and a corresponding overtime authorization forms that were subsequently completed and signed by Defendant Santucci, corroborate the fact that such inquiries took place and resulted in Joza receiving overtime pay when she said that she had worked overtime.  R. 554/18-555/10; 557/13-560/11.  Exs. G, M.

Joza was working uncompensated overtime.  The evidence does not support Joza's speculative theories.

As for Joza's time clock records, the evidence established that Hotel employees did not punch out for lunch unless they left the premises.  Thus, an employee like Joza, who is scheduled to work 35 hours in a given week, would be expected to have been "on site" for 40 hours *plus* whatever time would have lapsed each day that week between punching in and starting work and ending work and punching out.[45]  Moreover, the evidence also established that Joza's managers did inquire of her, pursuant to Hotel policy, whether she had worked overtime whenever her weekly time clock records indicated that she had been on site for longer than expected, and that she was paid overtime every time that she actually indicated that she had worked overtime, and was not paid overtime when she indicated that she had not worked overtime.  R. 102/19-104/7; 599/8-600/9; 621/18-622/12.

As for the Defendants awareness of Joza and her  lunchtime activities, the Defendants were aware (and occasionally observed) that Joza habitually took her lunch break and ate lunch with the same group of friends in the Hotel cafeteria until sometime in 2003; when she and her friends had a falling out.  R. 438/22-24; 438/25-440/15; 576/18-19; 576/22-24; 597/4-6.  The Defendants were also aware (and occasionally observed) that Joza took her lunch break and ate lunch at her cubicle after the falling out in 2003. R. 602/8-23.  The Defendants were not aware – except for those documented occasions when Joza submitted an overtime form and received overtime pay – of any instances when Joza worked instead of taking a lunch break, or worked while she was eating lunch.  R. 438/18-21; 603/3-13; 604/11-14; 632/10-18; 657/8-12.

---

[45] The Union and the Hotel agreed to allow for up to 15 minutes between punching in and starting work and ending work and punching out.  R. 435/23-436/3.  Using this guideline, an employee scheduled to work 35 hours in a week would be expected to be on site for up to 42.50 hours without having worked any overtime; i.e., 35 hours of work; 5 hours of lunch breaks, and up to 2.5 hours of pre- and post-shift time "on the clock."  An analysis of Joza's weekly time records shows that she was rarely on site for more than 42.5 hours in any given week.  Exs. T-Y.

Likewise, although some of the Defendants were aware (and occasionally observed) that Joza stayed on the Hotel premises following the end of her shift; they understood that Joza did so because she was awaiting a ride home.[46]  R. 622/6-16; 658/1-4.  Except for those documented occasions when Joza submitted an overtime form and received overtime pay, the Defendants were not aware of any instances when Joza worked beyond the end of her shift.  R. 603/22-25.  Moreover, their occasional observations of Joza when she was at the Hotel after her shift waiting for a ride involved seeing her reading, watching DVD movies on her laptop computer, surfing the Internet on her laptop computer, and talking on the telephone, and otherwise engaged in personal, not work, activities.  There is simply no evidence that any of the Defendants ever saw, observed, or otherwise became aware of Joza doing any "work" during her lunch hour or outside of her regular hours – except on those occasions when an overtime form was completed and she was paid her overtime compensation.

In *Slattery v. HCA Wesley Rehab. Hosp., Inc.*, 83 F.Supp.2d 1224, 1230 (D. Kan. 2000), the District Court granted summary judgment against an employee who was claiming that the employer should have known that she was working additional overtime hours because "other workers saw her at work after hours."  *Id.* at 83 F.Supp.2d 1230-31.  The district court noted that there was evidence that the plaintiff "performed personal tasks while she was at work after hours," and, thus, found that the fact that "coworkers may have seen her on the premises after hours" would not have created an inference that she was working.  *Id.*

That Joza frequently stayed on the Hotel premises after her shift had ended did not and should not have caused anyone to believe that she was "working" because she herself explained, and it was well known, that she waited after work to get a ride home from her son, or to provide

---

[46] In large part, this understanding came from the fact that Joza told the Defendants, when they asked, that she was waiting for a ride.  R. 601/25-602/2; 622/6-13; 624/21-625/3; 625/20-23.  Joza herself admitted that this is what she actually told the Defendants.  R. 58/24-59/6; 172/2-25.

a ride home to her sister, as often as 3 or 4 times a week.  R. 58/12-59/6; 60/10-18.  Moreover, the Defendants' anecdotal observations of Joza tending to personal matters while waiting for a ride would have only reinforced the understanding that she was not working.  Thus, assuming, *arguendo*, that Joza was actually performing any job-related tasks during this time, the simple fact is that none of the Defendants were aware of it, or had any reason to know about it.

**D.     Joza has failed to prove that the individual Defendants were her employers.**

Joza was an undeniably an employee of the Hotel, but alleges that the individual Defendants were also her employers.  The FLSA defines "employer" as meaning "any person acting directly or indirectly in the interest of an employer *in relation to an employee*."  29 USC § 203(d) (emphasis added).[47]  Although this statutory definition is somewhat circular (using the word "employer" to define "employer"), the emphasized language makes clear that the relevant analysis focuses upon whether a person is the employer of a particular employee.  *See Herman v. ARS Security Services, Ltd.*, 172 F.3d 132, 139-40 (2d Cir. 1999) (explaining that the "over-arching concern is whether the alleged employer possessed the power to control *the workers in question*." (emphasis added)).

The question is whether any of the individual Defendants possessed the power to control Joza.  In *Herman*, the Second Circuit explained that the test utilized in making such a determination is whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.  *Id*. at

---

[47] NYLL Section 190 *et seq.* does not include includes "persons acting in the interest of an employer" in the definition of "employer."  *Compare* 29 USC § 203(d) and  Section 190; *Zheng*, 355 F.3d at 79.  Because of this distinction, none of the individual Defendants in this lawsuit could qualify as "employers" for purposes of Joza's state law claims.

139.  In this case, none of the individual Defendants[48] possessed the powers described in *Herman* because, *inter alia*, the CBA (which none of the individual Defendants played any role in negotiating or executing):  (1) dictated when, how, and for what reasons employees (including Joza) could be hired and fired; (2) established work schedules, and the method by which employees (including Joza) could select their work schedules; (3) controlled the conditions of employment; and (4) fixed both the rate, and method of payment, of compensation for employees (including Joza).

With respect to supervisory persons, Defendant Birmingham was the HR Manager, but she had no supervisory or managerial responsibility over Joza.  Indeed, she performed essentially administrative duties and functions for the Hotel; and although she sometimes participated in disciplinary actions, she did so in strict accordance with the requirements of the CBA and in conjunction with the Union.  Even Defendant Chiani, who was the General Manager, lacked the power to simply hire and fire employees, to control work schedules and conditions of employment, or to determine the rate and method of pay.  Rather, he was bound to adhere to the strictures of the CBA.  Defendants Pereira and Santucci similarly lacked the power to hire and fire employees, to control work schedules and conditions of employment, or to determine the rate and method of pay.  Moreover, although they did, for their brief periods of employment, supervise Joza and other reservationists, they did so in strict accordance with the requirements of the CBA, and in conjunction with the Union.

Given these circumstances, there is simply no evidence to support the assertion that the individual Defendants were each Joza's employer for purposes of her FLSA claims in this

---

[48] It should be noted that there was no evidence that any of the individual Defendants owned any financial interest in the Hotel, or served as "officers" of the entity that operated the Hotel.

lawsuit.  Rather, the individual Defendants were mere managers employed by the Hotel to carry on its business, and to supervise employees in strict accordance with the terms of the CBA.

**E.      Joza failed to prove that any alleged violations were willful.**

In order to extend the limitations period applicable to her FLSA claim from 2 years to 3 years from the date she filed this lawsuit, and in order to recover liquidated damages under the FLSA, Joza was required to prove that each Defendants alleged failure to pay her overtime in accordance with the requirements of the FLSA was "willful."  A willful violation occurs if the employer either knew that its conduct violated the FLSA or showed reckless disregard for whether its actions violated the FLSA.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Assuming, *arguendo*, that Joza has even proven a violation of the FLSA by any of the Defendants, she has certainly failed to prove a "willful" violation by any of them.  Not only was Joza the only Hotel employee, in more than twenty years, to ever claim that she had worked uncompensated overtime (R. 655/24-656/4), her own claim concerned alleged "extra" overtime work that she took it upon herself to work without authorization from (or even notifying) Defendants, and then failed to report – both initially when she failed to include it on her overtime forms, and later when questioned by her supervisors as part of their review of the weekly time records.  If anything, the evidence established that Defendants made reasonable and appropriate efforts to ensure that the Hotel complied with the FLSA, and that they were, if anything, thwarted in those efforts by Joza's secretive conduct and misrepresentations.

As noted above, contrary to what Joza suggests, the fact that her weekly time records may have shown her to have been on the Hotel premises for more than 40 hours in some weeks, even though she was scheduled to work 35 hours, was not and is not probative of her having worked uncompensated overtime.  Again, because Hotel employees did not punch out for lunch

29

(unless they left the premises), an employee scheduled to work 35 hours in a given week would be expected to have been "on site" for 40 hours *plus* whatever time would have lapsed each day that week between punching in and starting work and ending work and punching out, and the CBA's punch in and punch out guidelines would, if followed, suggest that an employee scheduled to work 35 hours in a week would be expected to be on site for up to 42.50 hours without having worked any overtime; i.e., 35 hours of work; 5 hours of lunch breaks, and up to 2.5 hours of pre- and post-shift time "on the clock."[49]   And, as noted above, the evidence established that Joza's managers did inquire, pursuant to Hotel policy, whether she had worked overtime when her weekly time records indicated that she had been on site for longer than expected, and that she was paid overtime every time that she actually indicated that she had worked overtime, and was not paid overtime when she indicated that she had not worked overtime.

In summary, the fact that Joza successfully deceived Defendants about her alleged "extra" overtime work (assuming she actually worked such "extra" overtime) does not legally, or logically, suggest that the failure to pay Joza for this extra, unreported, overtime was a willful violation of the FLSA.  *McLaughlin, supra* at 486 U.S. 133.  Having failed to establish any willful violation of the FLSA, Joza is constrained by a 2-year limitations period, and is not entitled to any award of liquidated damages.

## IV.
## CONCLUSION AND PRAYER

As described herein, (a) Section 190 *et seq.* of the NYLL does not provide a cause of action for allegedly unpaid overtime; (b) Joza's claims under Section 190 *et seq.* of the NYLL claims are preempted or otherwise precluded by federal labor law; (c) Joza has not met the

---

[49] Joza's weekly time records shows that she was rarely on site for more than 42.5 hours in any given week.

burden of proof under the FLSA; (d) there is no evidence that Joza actually worked any additional, unreported overtime hours; (e) there is no evidence that Defendants suffered or permitted Joza to work any additional, unreported overtime hours; (f) to the extent that Joza worked additional overtime hours, the evidence is conclusive that she intentionally failed to report that fact to Defendants; (g) there is no evidence that the individual Defendants are "employers," as that term is defined under the FLSA; and (h) there is no evidence that any alleged violation of the FLSA or New York state law provisions regarding overtime was willful.

WHEREFORE PREMISES CONSIDERED, Defendants WW JFK LLC, d/b/a Ramada Plaza Hotel, Mary Birmingham, Ali Chiani, Robert Santucci, and Rene Pereira are not liable to Plaintiff Jenny Joza for any unpaid overtime, or any other damages or relief, legal or equitable, sought by Joza.

> Respectfully submitted,
>
> ANDREWS KURTH LLP
>
> By:  /s/ Matthew L. Hoeg
>       Matthew L. Hoeg
>       State Bar No 09772880
>       600 Travis, Suite 4200
>       Houston, Texas  77002
>       Telephone:  (713) 220-4012
>       Facsimile:  (713) 238-7428
>
> ATTORNEYS FOR DEFENDANTS,
> WW JFK LLC, d/b/a RAMADA PLAZA HOTEL,
> MARY BIRMINGHAM, ALI CHIANI, ROBERT
> SANTUCCI, and RENE PEREIRA

OF COUNSEL:
Joseph Patella
ANDREWS KURTH LLP
450 Lexington Ave., 15th Floor
New York, New York 10017

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of December, 2009, I caused to be electronically filed the foregoing Defendants' Post-Trial Memorandum with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to:

Lee Seham: ssmpls@aol.com

Lucas Keith Middlebrook: lmiddlebrook@ssmplaw.com

Stanley Silverstone: ssilverstone@ssmplaw.com

Susan Tracy Edwards: sedwards@ssmplaw.com

*/s/ Matthew L. Hoeg*
Matthew L. Hoeg

32