

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| _____ | x | |
| JENNY JOZA, | § | |
| | § | |
| Plaintiff, | § | CASE NO. 07-CV-4153 |
| vs. | § | |
| | § | |
| WW JFK LLC, dba, RAMADA PLAZA HOTEL; | § | |
| and, as individuals, MARY BIRMINGHAM, ALI | § | |
| CHIANI, ROBERT SANTUCCI, and RENE | § | |
| PEREIRA, | § | |
| | § | |
| Defendants. | § | |
| _____ | x | |

## DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants, WW JFK LLC, d/b/a RAMADA PLAZA HOTEL (the "Hotel"), MARY BIRMINGHAM, ALI CHIANI, ROBERT SANTUCCI, and RENE PEREIRA (collectively, "Defendants"), and file these Proposed Findings of Fact and Conclusion of Law, and would respectfully show the following:

## I.
## FINDINGS OF FACT

1.     Plaintiff, Jenny Joza, is a Hotel employee who filed this lawsuit seeking to recover: (a) $35,186.24 in allegedly unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* relating to the three year period preceding October 4, 2007; and (b) $86,916.16 in allegedly unpaid wages and overtime under Section 190 *et seq.* of the New York Labor Law relating to the six year period preceding October 4, 2007.

2.     Prior to filing this lawsuit in 2007, Joza had worked as a Hotel reservationist for more than 20 years and was, at all relevant times, a member of a collective bargaining unit represented by the New York Hotel & Motel Trades Council, AFL-CIO (the "Union").  The

terms and conditions of Joza's employment were governed by a collective bargaining agreement ("CBA") between the Union and the Hotel.

3.      Joza's work shift began at 8 a.m. and ended at 4 p.m.

4.      Pursuant to Hotel policy, Joza was required to clock in upon arriving at the Hotel, and to clock out when she physically left the Hotel premises.

5.      The time clock was located near the employee entrance, and employees did not clock out when they took lunch, breaks, or otherwise stopped working if they were still on the Hotel premises.  Thus, the time clock recorded all time that employees were physically on the premises.

6.      Joza was required to report any overtime hours that she worked on a written "overtime" form that listed her name, the date the overtime was worked, the amount of overtime worked, and the reason for working overtime.  Joza was aware of the process for reporting overtime, and submitted such forms (or had them submitted for her by her sister or others) on numerous occasions during her employment at the Hotel.  By way of example, Joza submitted, and was paid, overtime in 8 weeks during the first half of 2007, 7 weeks during 2006, and 18 weeks during 2005.

7.      Although the CBA and the Hotel work rules state that "no employee shall receive overtime pay unless such overtime has been authorized previously by such employee's department or division manager," the Hotel allowed Joza to submit such overtime forms even after the overtime had been worked, and paid her for such belatedly reported overtime work even if it had not been pre-authorized.  In fact, every overtime form ever submitted by Joza (or on her behalf) was accepted, and she received overtime pay for every minute of overtime ever reported by her of for her on such forms; even when she failed to secure prior authorization.

2

8.     The Hotel payroll was approximately $12,000,000 per year, and overtime payments ranged between $150,000 and $200,00 per year.  Thus, the payment of overtime was neither an uncommon nor a discouraged practice at the Hotel.  In fact, Joza was the only employee, in more than 20 years, to ever claim to have worked uncompensated overtime hours.

9.     Although Joza claimed that she was afraid to submit overtime forms for her alleged "extra" overtime hours worked, her alleged fear was not reasonable.  No manager, including any individual Defendant, ever refused or failed to sign an overtime form that was submitted by Joza or on her behalf.  Nor did any manager, including any individual Defendant, ever tell Joza not to submit overtime forms, or threaten to take, much less take, disciplinary action against her for working overtime or submitting overtime forms.  In fact, no Hotel employee had ever been disciplined, or threatened with discipline, for working overtime or submitting overtime forms.

10.     With respect to whether Joza actually worked any "extra" overtime beyond that which she actually reported, Joza offered no journals, records, emails, letters, notes, or other documents to substantiate her claim that she worked such extra overtime.  In fact, the only exhibit offered by Joza that addressed her alleged extra overtime hours was a handwritten summary that she prepared and provided to her counsel, and it contradicted her testimony because it indicated, even if true, that she had not worked more than 40 hours per week on average.[1]

11.     Moreover, Joza's testimony consisted of simply confirming, at the prompting of her counsel, for each of the seven years in question that: (a) the year was a busy year; (b) she

---

[1] Joza admitted, on cross-examination, that her calculations reflected her estimate of the total number of hours she worked **in excess of 35 hours per week** for each of the years in question.  However, when those annual estimates were converted to a weekly average and then added to her scheduled work hours for the year in question, the hours worked by Joza still did **not** exceed 40 per week.

HOU:2979984.1

worked through her lunch 3-4 times per week; (c) she worked additional hours of overtime each week before/after her shift; and (d) she was not paid for these extra hours.  Her alleged recollections were nebulous and seemed rehearsed, and she offered no corroborating evidence that she worked these extra overtime hours without receiving compensation.  Although her sister and several co-workers or former co-workers testified that she was a good worker, and that they had personally observed her working during lunch and/or before or after her assigned shift, none of them could, or did, testify that what they observed was actually overtime, much less that Joza did not get paid for the work they observed.

12.    Joza's incredible, supposed recollection of each of the years in question was further undermined by the fact that she refused to vary from her stock answers even when confronted with specific, irrefutable evidence to the contrary.  By way of example:

(a) when questioned about the severe downturn in the hospitality industry following the tragic events of 9/11/01, Joza testified that the hotel was just as busy after 9/11 as it had been before;

(b) although she begrudgingly admitted that the Hotel was 80% filled with National Guard troops in 2002 and part of 2003, and that most of the remaining 20% was devoted to long-term contracts to house airline crews, Joza still insisted that the reservation department was so busy that she had to work 8-10 hours of overtime each week

(c) although she admitted that she left work 2-3 times per week to attend post-accident physical therapy sessions in 2003, Joza still insisted that she had somehow managed to work 4-8 hours of overtime each week during that half of 2003 that she actually worked;

(d) although she admitted that an entire wing of the Hotel was shut down after a garbage truck had ripped off the fire escape in 2003, Joza still insisted that the reservation department was so busy that she had to work 4-8 hours of overtime each week;

(e) although several friends and her union representative testified that they ate lunch with Joza almost every day in the Hotel cafeteria until late 2003, Joza insisted that she worked through her

4

lunch hour at her cubicle 4 days a week during the years 2001, 2002 and 2003;

(f) although she admits that she heated and ate a meal at her desk, frequently told inquiring co-workers that she was on her lunch break, and diverted the Hotel phones away from her desk while she was eating her lunch, Joza still insisted that she was actually working when she ate lunch at her desk beginning in 2003; and

(g) although she admitted that the time clock records show that she was not even physically on the premises for more than 40 hours in most weeks of her employment, Joza insisted that she had worked 9.5-16 hours of overtime each week during the years in question.

13.    Although well practiced, Joza's testimony amounted to nothing more than her purported recollection of the level of reservation activity at the Hotel during the years in question, and the tasks that she *might have* performed had she engaged in uncompensated overtime work.  The number of extra overtime hours that Joza claimed to have worked each year was simply not credible, and was belied by specific, undisputed evidence concerning the Hotel's operations and reservation activity, as well as Joza's own condition and workplace activities, during the years in question.

14.    With respect to whether any of the Defendants knew, or had any reason to know, about her alleged extra overtime work, even Joza admitted that she had never submitted any overtime forms for any of this alleged "extra" overtime, and did not otherwise inform any of the Defendants that she had worked any extra overtime.  She also admitted that she never initiated a complaint or grievance under the CBA with respect to not being paid for any overtime work, or otherwise complained to Defendants about not being paid for any extra overtime work.

15.    With respect to grievances, the CBA contains procedures that are to be used to resolve disputes between the Hotel and employees who are members of the collective bargaining unit.  That clause applies to "[a]ll complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this agreement or any

5

acts, conduct or relations between the parties, directly or indirectly. . . ." (emphasis added). Additionally, the CBA contains a special "Overtime" provision that calls for the "expedited arbitration before the Office of the Impartial Chairman" in the event of a dispute concerning overtime issues.

16.     Joza offered no evidence that any of the Defendants actually knew about her extra overtime.  Rather, she testified that some of the Defendants sometimes walked past her cubicle while she was eating lunch, or while she was there after her shift had ended, and suggests that they should have discerned that she was working overtime.  Notably, Joza offered no evidence, or argument, as to how the Defendants would have distinguished between reported overtime for which she was paid and unreported, extra, overtime that she now claims to have worked as they walked past and supposedly took notice of her working through lunch or after her shift.

17.     Hotel policy is to pay overtime compensation to any employee who works overtime, even if the overtime had not been pre-authorized.  Moreover, overtime is paid on the basis of the overtime forms that employees complete and submit, and Joza was paid for all overtime that she reported on such forms.

18.     Additionally, department mangers review and compare the weekly time clock reports to the overtime forms submitted for that week, and inquire of any employee shown to have been on the Hotel premises longer than their scheduled work hours without having submitted an overtime form for that extra time – so as to verify whether the employee worked overtime.  The reservation department managers, including Defendants Pereira and Santucci, made such inquiries of Joza directly when they were her supervisor, and that they had her complete an overtime form on those occasions when she indicated that she had worked overtime. On other occasions, Joza indicated that she had not worked overtime, and offered explanations that ranged from having failed to clock out when she left for a doctor's appointment to being on

6

site (not working but not yet clocked out) while waiting to ride home with her son and/or her sister.

19.     Joza did not have a designated lunch hour, and took her lunch hour break as convenient during an approximately 3 hour window. Joza brought lunch every day, and generally ate her lunch with the same group of friends in the Hotel cafeteria until sometime in 2003, or at her desk (sometimes with her sister) after she ceased eating lunch with her friends in the Hotel cafeteria.  None of the Defendants ever observed Joza to be working while eating lunch; and were unaware of Joza having ever worked any overtime – either during lunch or before or after her shift – for which she was not paid.

## II.
## CONCLUSIONS OF LAW

1.     Section 190 *et seq.* (i.e., Article 6) of the New York Labor Laws contains substantive provisions that address: (a) the frequency of wage payment (Section 191); (b) the payment of sales commissions (Sections 191-B & 191-C); (c) the payment of wages in cash versus direct deposit (Section 192); (d) the making of deductions from wages (Section 193); (e) sex-based wage differentials (Section 194); (f) employee gratuities (Section 196-D); and (g) kickbacks.  It also provides for various penalties and remedies against employers who violate its substantive provisions (Sections 197 - 198-A).[2]

2.     Wage claims brought under Article 6 must be based upon an *enforceable contract right to such wages.  See, e.g., Zaitsev v. Saloman Brothers, Inc.*, 60 F.3d 1001, 1004 (2d Cir 1995), citing *Tierney v. Capricorn Investors, L.P.*, 189 A.2d 629, 632, 532 NYS2d 700, 703 (1st Dept.) *appeal denied*, 599 NYS2d 804 (1993).  Absent proof that a claim for wages under

---

[2] The remaining provisions are either definitional (Section 190 & Section 191-A), address notice, posting and record keeping requirements (Sections 195 & 198-D) or address the powers and duties of, and interactions with, the commissioner (Sections 196, 196-A, 199 & 199-A).

Section 190 *et seq.* is premised upon an enforceable contract, the statute does not authorize such claims, and they must be dismissed. *Id. See also Firtell v. Update, Inc.*, 851 NYS2d 57 (Sup. 2007).

3.      Also, even when there exists a contractual basis for a plaintiff's claimed wages, Section 190 *et seq.* is limited in scope and only "'provides remedies for substantive violations of" Article 6. *Kaplan v. Aspen Knolls Corp.*, 290 F.Supp.2d 335, 339 (E.D.N.Y. 2003); *Kettler v. Fleming,* 820 N.Y.S. 2d 348 (3rd Dept. 2006); *Gallegos v. The Brandeis School*, 189 F.R.D. 256, 259 (E.D.N.Y. 1999) (citations omitted).  Persons who are "otherwise unprotected by the substantive wage laws of Labor Law article 6' may not assert a claim under Section 198." *Id.* at 259 (citations omitted).

4.      As pertain to the claims in this lawsuit, Section 190 *et seq.* does not authorize claims, or provide any remedy, for the alleged failure to pay wages or overtime compensation for overtime work. *See, e.g.*, *Gallegos, supra*; *O'Rourke v. Carmen M. Pariso, Inc.*, 501 F. Supp. 2d 445, 448 & n.2 (W.D. N.Y. 2007) (dismissing the lawsuit on grounds of federal preemption, but specifically noting "[a]lthough Plaintiffs assert [Section] 190 as a basis for their [cause of action] which includes the overtime pay demand, the requirement for time and on-half for overtime compensation derives from [Section] 650[.]"); *see also Zheng v. Liberty Apparel Co., Inc.,* 355 F.3d 61, 78 (2d Cir. 2003) (holding that overtime claims may be brought pursuant to Section 650 *et seq.* and 12 NYCRR 142-2.2, and distinguishing claims brought under Section 190 *et seq.*); *Jara v. Strong Steel Door, Inc.*, 20 Misc. 3d 1135(A), 872 N.Y.S.2d 691, 2008 WL 3823769 (Sup. 2008) (same).[3]  Rather, the substantive provisions relate to the frequency of wage payment

---

[3] The absence of any statute that actually requires that overtime compensation be paid has led some courts to conclude that such claims are not cognizable under New York law. *Diaz v. Electronic Boutique of America, Inc.*, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. 2005) at *29-30.  However, most courts now accept that such claims are cognizable under Section 650 *et seq.* and 12 NYCRR 142-2.2. *Id.*  In particular, Section 655(5)(B) authorized the New York State Minimum Wage Board to recommend that the State Commission of Labor promulgate overtime rate regulations. *See, e.g., Edwards v. Jet Blue Airways Corp.*, 852 NYS2d 724, 727 (Sup. 2008).  After the Wage

(Section 191), the payment of sales commissions (Sections 191-B & 191-C), the payment of wages in cash versus via direct deposit (Section 192), the making of deductions from wages (Section 193), sex-based wage differentials (Section 194), the payment of employee gratuities (Section 196-D), and wage kickbacks.

5.     To the extent that Section 190 *et seq.* does authorize Joza's state law wage claims, they are nevertheless preempted by federal labor law because they relate to the CBA, and Joza failed to first submit those claims to the CBA's grievance procedures.  *See* § 301 LMRA, 29 U.S.C. § 185.  *See Tran v. Tran*, 860 F.Supp. 91 (S.D. N.Y. 1993), *affirmed in relevant part*, 54 F.3d 115, 118 (2d Cir. 1995).  Federal labor law "requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by an employer and the union as the mode of redress." *Id.* at 95 (emphasis in original).  Absent a showing that the aggrieved employee has attempted to resort to grievance and arbitration procedures as provided by a collective bargaining agreement, **the employee is precluded from instituting a suit in federal court to recover pay and other damages arising out of disputes covered by the agreement**.  *Id.* at 95 (emphasis added); citing *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

6.     *Tran* is controlling precedent for purposes of this case because: (a) both Joza and the plaintiff in *Tran* are hotel employees who filed a lawsuit seeking to recover straight and overtime wages under Section 190 *et seq.*; (b) both Joza and the plaintiff in *Tran* were covered by the CBA between the Union and the member hotels of the New York Hotel Association (the "Association"); (c) both Joza and the plaintiff in *Tran* failed to "attempt to grieve or seek to

---

Board made such a recommendation, the Commissioner of Labor enacted 12 NYCRR 142-2.2; which requires overtime compensation for hours worked in excess of 40 in a week. *Id.* These regulations are recognized as being are enforceable in an action brought under Section 650 *et seq*. *See Diaz, supra* at *30. *See also Noble v. University Place Corp.*, 224 F.R.D. 330 & n. 85 (S.D.N.Y. 2004).

arbitrate [their] disputes with defendants as required" by the CBA; and (d) the Second Circuit affirmed the district court's conclusion that the state law claims brought by the *Tran* plaintiff were pre-empted, and should be dismissed.  In fact, in the same opinion in which it affirmed the district court's dismissal of the *Tran* plaintiff's state law claims, the Second Circuit reversed the district court conclusion that the *Tran* plaintiff's FLSA claims were pre-empted.  *Id*.

7.      Although *Tran* is the only case in which the Second Circuit has been called upon to address this issue with respect claims brought under Section 190 *et seq*. (not to mention with respect to the same CBA that is at issue in this case), other federal district courts in this circuit, and other Circuit Courts of Appeals, have reached the same conclusion.  *See, e.g., Vera v. Saks & Co.,* 218 F.Supp.2d 490 (S.D. N.Y. 2002), *affirmed*, 335 F.3d 109 (2nd Cir. 2003); *Flores v. The Pinnacle Group, et al.*, 2007 U.S. Dist. Lexis 18394 (S.D. N.Y. 2007); *Atchley v. Heritage Cablevision Associates*, 101 F.3d 495, 501-02 (7th Cir. 1996) (alleged violation of Indiana wage payment law); *Wheeler v. Grayco Trucking Corp.*, 985 F.2d 108 (3d Cir. 1993) (claim under Pennsylvania wage payment and collection law).  For the reasons discussed in the *Tran*, *Vera*, and *Flores* opinions, Joza's state law claims are preempted by federal labor law, and must be dismissed.

8.      Joza tries to avoid *Tran* and its progeny in two ways.  First, to avoid preemption, she argues that her claims under Section 190 *et seq*. are not based upon the CBA or any other contract, and are, instead, based upon some other unspecified right or entitlement to be paid overtime compensation.[4]  *C.f. Ellis v. HarperCollins Publishing*, 2000 U.S. Dist. LEXIS 8598 (S.D.N.Y. 2000) (claim under Section 190 *et seq*. is preempted if alleged contract relates to

---

[4] Joza does not, and cannot, allege that any contract other than the CBA entitles her to the allegedly unpaid wages she is now seeking.  Because she was a member of the collective bargaining unit covered by the CBA, any claim based upon another contract would be preempted.  Joza's pleadings have never articulated the *source* of her alleged entitlement to the wages she seeks to recover under Section 190 *et seq*.; and her evidentiary presentation at trial failed to address the *source* of her entitlement to such wages under state law.

CBA).  In fact, the substantive resolution of Joza's state law necessarily requires an analysis of the CBA; not merely to establish Joza's wage rate, but also to consider and address the applicability and enforceability of the overtime provisions of the CBA, and to determine the Hotel's right to require employees to follow overtime reporting procedures.  *See, e.g., Vera, supra* at 335 F.3d 115 & n.1.  Among other things, the CBA provides that "[n]o employee shall receive overtime pay unless such overtime work has been authorized previously by such employee's department or division manager."  Because Joza's alleged overtime work at issue in this lawsuit was not "previously authorized," the CBA expressly precludes her from receiving the very wages that she is seeking to recover under New York law.  Any questions about the enforceability of such a contract clause only underscores the fact that resolution of Joza's state law claims necessarily requires, and is dependent upon, an analysis of the CBA.

9.      If Joza is correct in asserting that her claims are not contract-based, then they nevertheless fail as a matter of law because claims brought under Section 190 *et seq.* must be based upon an enforceable contract right.  *See, e.g., Zaitsev, supra* at 60 F.3d 1004 (dismissing claim for wages brought under NYLL Section 190 *et seq.* because of lack of proof of enforceable contract right to such wages); *Tierney, supra* at 532 NYS2d 703 ("the plaintiff cannot assert a statutory claim to wages under the Labor Law if he has no enforceable contractual right to those wages"); *Firtell, supra* at 851 NYS2d 57 (dismissing claim for wages brought under Section 190 *et seq.* because of lack of proof of enforceable contract right to such wages).

10.      Joza's reliance upon *Mascol v. E & L. Transp., Inc.*, 387 F.Supp.2d 87, 98 (E.D.N.Y. 2005) is misplaced.  To begin, the *Mascol* plaintiff did not bring her state law claims under Section 190 *et seq.*[5]  Also, although the district court in *Mascol* correctly cited *Tran* for the

---

[5] That is significant because claims brought under Section 190 *et seq.* must, *inter alia*, be based upon an enforceable contract right.  *Zaitsev, supra* at 60 F.3d 1004; *Tierney, supra* at 532 NYS2d 703; *Firtell, supra* at 851 NYS2d 57.

proposition that a plaintiff who is covered by a collective bargaining agreement may nevertheless "pursue his individual statutory rights under the FLSA," it went on to apply that rationale to *both* the FLSA claims and the state law claims at issue in the lawsuit.  In doing so, the district court failed to recognize that the Second Circuit had actually distinguished between FLSA claims (not preempted) and state law claims (preempted) in its *Tran* opinion.  Consequently, the district court made no effort to reconcile its ruling concerning the state law claims with the treatment of such claims by the district court and the Second Circuit in *Tran*.[6]  To the extent that there exists a conflict between *Mascol* and *Tran*, the latter reflects the considered judgment of the Second Circuit, and is more closely analogous to this case since it involved a hotel employee who was covered by essentially the same CBA that is at issue herein, and who was pursuing the very same state law claims that are being pursued by Joza.  Thus, *Tran* and its progeny are the controlling precedent in this case.

11.     As for her FLSA claims, Joza failed to satisfy the "burden of proving that [her] employer did not compensate [her] for completed [overtime] work."[7]  *Grochowski v. Phoenix Construction*, 318 F.3d 80, 87 (2d Cir. 2003).  See also *Harvill v. Westward Commc'ns LLC*, 311 F.Supp. 2d, 573, 583 (E.D. Tex. 2004), *affirmed* 433 F.3d 428 (5th Cir. 2005) (Plaintiff must "prove with 'definite and certain evidence' that she was not properly compensated for work performed."); citing *Reeves v. Int'l Tel. and Teletype Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980), cert. denied, 449 U.S. 1077 (1981).  In this regard, "work" is defined as "physical or mental

---

[6] The district court in *Wright v. Brae Burn Country Club, Inc.*, 2009 U.S. Dist. LEXIS 26492 (S.D.N.Y. 2009) likewise cited *Tran* without discussing, or perhaps realizing, that the state law claims at issue in *Tran* were actually found to be preempted.

[7] The FLSA requires employers to pay overtime to all non-exempt employees who are employed to work more than forty (40) hours in a workweek.  29 U.S.C. § 207(a)(1).  To the extent that Joza has valid state law claims, and those state law claims are not preempted, then they generally consist of the same elements and are subject to the same burden of proof found under the FLSA.  *See Grochowski v. Phoenix Construction*, 318 F.3d 80, 87 (2d Cir. 2003); *see also Zheng v. Liberty Apparel Co., Inc.,* 355 F.3d 61, 78 (2d Cir. 2003).

exertion . . . ***controlled or required by the employer*** and pursued necessarily and primarily for the benefit of the employer and his business," and Joza simply failed to prove that she engaged in such "work." *Reich v. New York City Transit Authority*, 45 F.3d 646, 651 (2d Cir. 1995) (emphasis added); *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 523 (2d. Cir. 1998) (explaining that "an employee may perform a task that seems reasonable . . . but which the employer neither required nor controlled, and for which therefore the employee is not entitled to be paid.").

12.     Joza's claim that she worked "extra" overtime hours beyond those which she reported on her overtime forms (and for which she was paid) is supported only by her own vague testimony about working, and sometimes not being paid for working, through her lunch period and before/after her shift.  Such "nebulous" and "uncorroborated" recollections – in the face of the undisputed evidence that the plaintiffs had been paid for every hour of overtime that they had reported – are insufficient to establish that she engaged in any uncompensated "work."  *Seever, supra* at 528 F.Supp.2d 169-70.

13.     However, even if one were to assume that Joza did expend some *extra* "physical or mental exertion" beyond that which she reported on her overtime forms, there was absolutely no evidence that her efforts were "controlled or required" by Defendants; much less "pursued necessarily and primarily for the benefit" of the Hotel.  *See Reich, supra* at 45 F.3d 651; *Holzapfel, supra* at 145 F.3d 523.  Rather, the alleged extra overtime was worked at her own discretion, without informing Defendants, and that the tasks she performed were tasks that could, and would, have been performed by other reservationists, or even by herself the following day, if she had left them; and were only performed by Joza because it was in her "nature" to do so; not

13

because she had been required, told or asked to do so by Defendants, and not because there was some urgent and compelling business need to do so immediately.[8]

14.     Even assuming, *arguendo*, that Joza performed these extra overtime tasks, she admittedly did so for personal reasons (i.e., to fulfill her "nature" to do so) and not because it was "controlled or required" by Defendants and "pursued necessarily and primarily for the benefit of the employer and his business." *Id.* Regardless of whether Joza's unilateral decision to perform such extra tasks was "reasonable," the fact is that it was not "necessarily and primarily pursued" for the Hotel, and it was "neither required nor controlled" by Defendants. Thus, she is "not entitled to be paid" overtime compensation for her alleged extra services. *Holzapfel, supra* at 145 F.3d 523. Simply put, her alleged extra overtime activities cannot, and do not, constitute "work" for purposes of the FLSA. *Id.*

15.     Also, because liability is only imposed upon employers who suffer or permit employees to work uncompensated overtime, Joza was obligated, but failed, to prove that Defendants "had knowledge, actual or constructive, that she was working" such overtime hours without compensation. *Id.* at 145 F.3d 524 ("an employer cannot suffer or permit an employee to perform services about which the employer knows nothing"). *See also Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995); *Harvill v. Westward Communications LLC*, 311 F.Supp.2d 573, 583 (E.D. Tex. 2004); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.1981) (explaining that knowledge affords employer the opportunity to comply with the Act); *Reich v. Department of Conservation & Natural Resources*, 28 F. 3d 1076, 1082 (11th Cir. 1996); *Davis v. Food Lion*, 792 F.2d 1274, 1276-77 (4th Cir. 1986).[9] On the contrary, the evidence showed that Joza failed to notify Defendants and deliberately prevented Defendants

---

[8] In fact, she admitted that on those occasions when she was asked or required to work overtime, her supervisor would immediately fill out an overtime form for her.

[9] *See also* 29 C.F.R. Section 785.12 (requiring proof of employer knowledge before liability attaches).

14

from acquiring knowledge of her alleged extra overtime; which means that any 'failure to pay for the overtime hours is not a violation' of the FLSA." *Newton, supra* at 47 F.3d 748; *Harvill, supra* at 311 F.Supp.2d 583; *see also Seever v. Carrols Corp.*, 528 F.Supp.2d 159, 166 (W.D.N.Y. 2007). Joza did not prove that she performed any extra overtime "work" for which she was not compensated, much less that Defendants knew or should have known about her extra overtime work. On the contrary, in fact, the evidence established that Joza failed to notify Defendants about, and prevented Defendants from acquiring knowledge of, her alleged extra overtime work.

16.     The submission of overtime forms was the procedure by which Hotel employees were to report overtime work and claim overtime compensation, and Joza omitted such work from her overtime forms, and never informed any of the Defendants that she had worked extra overtime hours beyond that which she reported. In the seminal case of *Forrester v. Roth's IGA Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981), the district court considered, and rejected, the claim of an employee who alleged that he had worked overtime for which he had not been compensated. *Id.* In affirming the district court's judgment, the Court of Appeals noted that the employee – like Joza in this case – was aware that overtime was supposed to be reported, and that the employer "regularly paid for such reported overtime." *Id.* at 414. The Court of Appeals further noted that the employee had regularly submitted such overtime forms and had been "paid for all of the overtime he reported;" and had not mentioned any allegedly "unpaid overtime work to any store official prior to filing his complaint." *Id.* Thus, in reviewing the employer's statutory obligation to pay overtime, the Court of Appeals explained:

> [a]n employer must have an opportunity to comply with the provisions of the FLSA. This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation. However, where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime

hours, the employer cannot be said to have suffered or permitted the employee to work in violation of [§] 207(a).

*Id.* at 414-15.

17.    The Second Circuit has not addressed this issue directly, but has twice cited with approval to the *Forrester* opinion for the proposition that "[f]or compensation to be awarded, plaintiff's activities must not only satisfy the above definition of work, but must also be performed with the employer's knowledge." *Holzapfel, supra* at 145 F.3d 524; *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d. Cir. 2008). *See also Newton v. City of Henderson*, 47 F.3d 746 (5th Cir. 1995), *Davis, supra* at 792 F.2d 1276-78 (4th Cir. 1986) (rejecting overtime claim of employee who failed to report alleged overtime); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1999) ("Plaintiff admitted that he was paid for the overtime hours he included on his time sheet, and that uncompensated time was the result of his failure to adequately record his time." Such failure to record claimed time is fatal to a later claim for such, if the company has no reason to be aware of the overtime."); *Brumbelow v. Quality Mills, Inc.*, 462 F. 2d 1324, 1327 (5th Cir. 1972) (applying estoppel principles to reject the overtime claim of an employee who had failed to report the alleged additional overtime on the time forms that she had submitted).

18.    If anything, the circumstances of this case are more egregious than in other "unreported overtime" cases in which plaintiffs' FLSA claims have been rejected. In this case, Joza was paid for every minute of time, including overtime, that she actually reported; and her claims concern extra overtime work that she allegedly performed but failed to report and/or deliberately chose not to report.[10] Additionally, Joza's managers reviewed the weekly time clock

---

[10] Although the FLSA obligates employers to maintain appropriate overtime records, it is well-established that employers may require employees to follow and adhere to reasonable procedures for reporting overtime worked, and may rely upon what employees report, and do not report. *See, e.g., Newton, supra* at 47 F.3d 749; *Davis, supra* at 792 F.2d 1276-78; *McKnight, supra* at 149 F.3d 1130.

HOU:2979984.1

records, and inquired of her when it appeared that she had been on site for longer than her scheduled work hours.  On those occasions when Joza reported that she had worked overtime, her supervisors made certain that an overtime form was submitted on her behalf, and she was paid.  On those occasions when Joza said that she had not worked overtime (and offered explanations ranging from having failed to clock out when she left for a doctor's appointment to having been on site waiting for a ride), her supervisors and the Hotel relied upon her response, and her failure to submit an overtime form, in not paying her any overtime.

19.    As the Ninth Circuit first explained nearly thirty years ago in *Forrester*, an employer "must have an opportunity to comply with the provisions of the FLSA," and "where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of" the FLSA's overtime requirements.  *Id.* at 646 F.2d 414-15. In this case, Defendants had no knowledge of Joza's alleged extra overtime work, and Joza herself prevented Defendants from learning about her alleged extra overtime work.

20.    There is no evidence that any of the Defendants ever saw, observed, or otherwise became aware of Joza doing any "work" during her lunch hour or outside of her regular hours – except on those occasions when an overtime form was completed and she was paid her overtime compensation.  When a plaintiff "performed personal tasks while she was at work after hours," the fact that "coworkers may have seen her on the premises after hours" would not have created an inference that she was working.  *Slattery v. HCA Wesley Rehab. Hosp., Inc.*, 83 F.Supp.2d 1224, 1230 (D. Kan. 2000).

21.    That Joza frequently stayed on the Hotel premises after her shift had ended did not and should not have caused anyone to believe that she was "working" because she herself explained, and it was well known, that she waited after work to get a ride home from her son, or

to provide a ride home to her sister, as often as 3 or 4 times a week.  Moreover, the Defendants'
anecdotal observations of Joza tending to personal matters while waiting for a ride would have
only reinforced the understanding that she was not working.  Thus, assuming, *arguendo*, that
Joza was actually performing any job-related tasks during this time, the simple fact is that none
of the Defendants were aware of it, or had any reason to know about it.

22.     Joza also failed to produce "sufficient evidence to show the amount and extent of
that work as a matter of just and reasonable inference."  *Grochowski, supra* at 87-88; *Reich v.
Southern New England Telecomm. Corp.*, 121 F.3d 58 (2d Cir.1997); *Broad v. Boeing
Manufactured Housing, Inc.*, 681 F.Supp. 1224, 1227 (W.D. Tex. 1987).  Rather, she offered
only her own testimonial estimates, and the evidence clearly showed that the hours she
"claimed" to have worked were grossly "exaggerated," had no factual basis, and were belied by
credible evidence – including her own overtime forms, and her initial, handwritten estimates of
the hours worked in excess of 35.  Evidence that Joza exaggerated the extra overtime hours she
claimed to have worked effectively "negates" the reasonableness of [any] inference that might
otherwise have been drawn had she succeeded in establishing her *prima facie* case.  *Broad*, 681
F.Supp. at 1227.  Likewise, any "just and reasonable inference" that Joza might otherwise have
established was negated by the fact that she was paid for reported overtime work, and failed to
prove that she was prevented from reporting and getting paid for additional overtime work.
*Seever*, 528 F.Supp.2d at 166.  Indeed, there was no evidence that Joza was prevented from
reporting and being paid for extra overtime work beyond that which she actually reported.

23.     The FLSA defines "employer" as meaning "any person acting directly or
indirectly in the interest of an employer *in relation to an employee*."  29 USC § 203(d) (emphasis

18

HOU:2979984.1

added).[11]   Although this statutory definition is somewhat circular (using the word "employer" to define "employer"), the emphasized language makes clear that the relevant analysis focuses upon whether a person is the employer of a particular employee.   *See Herman v. ARS Security Services, Ltd.*, 172 F.3d 132, 139-40 (2d Cir. 1999) (explaining that the "over-arching concern is whether the alleged employer possessed the power to control *the workers in question*." (emphasis added)).   The test utilized in making such a determination is whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.   *Id*. at 139.

24.     Joza was undeniably an employee of the Hotel, but the individual Defendants were not her employers.   In particular, none of the individual Defendants possessed the powers described in *Herman* because, *inter alia*, the CBA (which none of the individual Defendants played any role in negotiating or executing):   (1) dictated when, how, and for what reasons employees (including Joza) could be hired and fired; (2) established work schedules, and the method by which employees (including Joza) could select their work schedules; (3) controlled the conditions of employment; and (4) fixed both the rate, and method of payment, of compensation for employees (including Joza).

25.     With respect to supervisory persons, Defendant Birmingham was the HR Manager, but she had no supervisory or managerial responsibility over Joza.   Indeed, she performed essentially administrative duties and functions for the Hotel; and although she sometimes participated in disciplinary actions, she did so in strict accordance with the

---

[11] NYLL Section 190 *et seq.* does not include includes "persons acting in the interest of an employer" in the definition of "employer."   *Compare* 29 USC § 203(d) and  Section 190; *Zheng*, 355 F.3d at 79.  Because of this distinction, none of the individual Defendants in this lawsuit could qualify as "employers" for purposes of Joza's state law claims.

requirements of the CBA and in conjunction with the Union.  Even Defendant Chiani, who was the General Manager, lacked the power to simply hire and fire employees, to control work schedules and conditions of employment, or to determine the rate and method of pay.  Rather, he was bound to adhere to the strictures of the CBA.  Defendants Pereira and Santucci similarly lacked the power to hire and fire employees, to control work schedules and conditions of employment, or to determine the rate and method of pay.  Moreover, although they did, for their brief periods of employment, supervise Joza and other reservationists, they did so in strict accordance with the requirements of the CBA, and in conjunction with the Union.

26.     Given these circumstances, there is simply no evidence to support the assertion that the individual Defendants were each Joza's employer for purposes of her FLSA claims in this lawsuit.  Rather, the individual Defendants were mere managers employed by the Hotel to carry on its business, and to supervise employees in strict accordance with the terms of the CBA.

27.     In order to extend the limitations period applicable to her FLSA claim from 2 years to 3 years from the date she filed this lawsuit, and in order to recover liquidated damages under the FLSA, Joza was required to prove that each Defendants alleged failure to pay her overtime in accordance with the requirements of the FLSA was "willful."  A willful violation occurs if the employer either knew that its conduct violated the FLSA or showed reckless disregard for whether its actions violated the FLSA.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

28.     Assuming, *arguendo*, that Joza has even proven a violation of the FLSA by any of the Defendants, she has certainly failed to prove a "willful" violation by any of them.  Not only was Joza the only Hotel employee, in more than twenty years, to ever claim that she had worked uncompensated overtime, her own claim concerned alleged "extra" overtime work that she took it upon herself to work without authorization from (or even notifying) Defendants, and then

failed to report – both initially when she failed to include it on her overtime forms, and later when questioned by her supervisors as part of their review of the weekly time records.  If anything, the evidence established that Defendants made reasonable and appropriate efforts to ensure that the Hotel complied with the FLSA, and that they were, if anything, thwarted in those efforts by Joza's secretive conduct and misrepresentations.

29.     As noted above, contrary to what Joza suggests, the fact that her weekly time records may have shown her to have been on the Hotel premises for more than 40 hours in some weeks, even though she was scheduled to work 35 hours, was not and is not probative of her having worked uncompensated overtime.  Again, because Hotel employees did not punch out for lunch (unless they left the premises), an employee scheduled to work 35 hours in a given week would be expected to have been "on site" for 40 hours *plus* whatever time would have lapsed each day that week between punching in and starting work and ending work and punching out, and the CBA's punch in and punch out guidelines would, if followed, suggest that an employee scheduled to work 35 hours in a week would be expected to be on site for up to 42.50 hours without having worked any overtime; i.e., 35 hours of work; 5 hours of lunch breaks, and up to 2.5 hours of pre- and post-shift time "on the clock."[12]  And, as noted above, the evidence established that Joza's managers did inquire, pursuant to Hotel policy, whether she had worked overtime when her weekly time records indicated that she had been on site for longer than expected, and that she was paid overtime every time that she actually indicated that she had worked overtime, and was not paid overtime when she indicated that she had not worked overtime.

30.     In summary, the fact that Joza successfully deceived Defendants about her alleged "extra" overtime work (assuming she actually worked such "extra" overtime) does not legally, or

---

[12] Joza's weekly time records shows that she was rarely on site for more than 42.5 hours in any given week.

logically, suggest that the failure to pay Joza for this extra, unreported, overtime was a willful violation of the FLSA. *McLaughlin, supra* at 486 U.S. 133. Having failed to establish any willful violation of the FLSA, Joza is constrained by a 2-year limitations period, and is not entitled to any award of liquidated damages.

31.     Joza has failed to prove her case and is entitled to none of the relief she seeks in this lawsuit. As described herein, (a) Section 190 *et seq.* of the NYLL does not provide a cause of action for allegedly unpaid overtime; (b) Joza's claims under Section 190 *et seq.* of the NYLL claims are preempted or otherwise precluded by federal labor law; (c) Joza has not met the burden of proof under the FLSA; (d) there is no evidence that Joza actually worked any additional, unreported overtime hours; (e) there is no evidence that Defendants suffered or permitted Joza to work any additional, unreported overtime hours; (f) to the extent that Joza worked additional overtime hours, the evidence is conclusive that she intentionally failed to report that fact to Defendants; (g) there is no evidence that the individual Defendants are "employers," as that term is defined under the FLSA; and (h) there is no evidence that any alleged violation of the FLSA or New York state law provisions regarding overtime was willful.

32.     All findings of fact properly considered conclusions of law and all conclusions of law properly considered findings of fact shall be so considered.

HOU:2979984.1

Respectfully submitted,

ANDREWS KURTH LLP

By:  /s/ Matthew L. Hoeg
        Matthew L. Hoeg
        State Bar No 09772880
        600 Travis, Suite 4200
        Houston, Texas  77002
        Telephone:  (713) 220-4012
        Facsimile:  (713) 238-7428

ATTORNEYS FOR DEFENDANTS,
WW JFK LLC, d/b/a RAMADA PLAZA HOTEL,
MARY BIRMINGHAM, ALI CHIANI, ROBERT
SANTUCCI, and RENE PEREIRA

OF COUNSEL:
Joseph Patella
ANDREWS KURTH LLP
450 Lexington Ave., 15th Floor
New York, New York 10017

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of December, 2009, I caused to be electronically filed the foregoing Defendants' Proposed Findings of Fact and Conclusions of Law and the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to:

Lee Seham: ssmpls@aol.com

Lucas Keith Middlebrook: lmiddlebrook@ssmplaw.com

Stanley Silverstone: ssilverstone@ssmplaw.com

Susan Tracy Edwards: sedwards@ssmplaw.com

            /s/ Matthew L. Hoeg
            Matthew L. Hoeg

HOU:2979984.1