UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ————————————————— x | |
| JENNY JOZA, | § |
| | § |
| Plaintiff, | § CASE NO. 07-CV-4153 |
| vs. | § |
| | § |
| WW JFK LLC, dba, RAMADA PLAZA HOTEL; | § |
| and, as individuals, MARY BIRMINGHAM, ALI | § |
| CHIANI, ROBERT SANTUCCI, and RENE | § |
| PEREIRA, | § |
| | § |
| Defendants. | § |
| ————————————————— x | |

---

## DEFENDANTS' RESPONSE TO PLAINTIFF'S POST-TRIAL MEMORANDUM

---

Matthew L. Hoeg
Texas State Bar No. 09772880
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas  77002
Telephone: (713) 220-4012
Facsimile:  (713) 238-7328

Joseph Patella (JP 3196)
ANDREWS KURTH LLP
450 Lexington Avenue, 15th Floor
New York, New York  10017
Telephone:  (212) 850-2839
Facsimile:  (212) 850-2929

ATTORNEYS FOR DEFENDANTS WW JFK,
LLC, MARY BIRMINGHAM, ALI  CHIANI,
ROBERT SANTUCCI, AND RENE PEREIRA

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... iii

I. INTRODUCTION ................................................................................................................... 1

II. ARGUMENT AND AUTHORITIES ................................................................................... 1

    A.     Joza has abandoned all pretense of arguing that NYLL Section 190 *et seq.* (i.e., Article 6) authorizes her wage and overtime claims under New York law. .................. 1

    B.     Joza's anti-preemption argument ignores the facts and establishes that her state law claims are invalid. ..................................................................................................... 3

    C.     Joza has mischaracterized the evidence in support of her FLSA claims and misunderstands the law applicable to her FLSA claims. ............................................... 6

III. CONCLUSION AND PRAYER ......................................................................................... 15

CERTIFICATE OF SERVICE ................................................................................................. 16

HOU:2980960.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*14 Penn Plaza LLC v. Pyett*,
___ U.S. ___; 129 S. Ct. 1456 (April 1, 2009) ..........................................................................4

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946) ...................................................................................................11, 12

*Brumbelow v. Quality Mills, Inc.*,
462 F. 2d 1324  (5th Cir. 1972) ................................................................................................11

*Chao v. Gotham Registry, Inc.*,
514 F.3d 280 (2d Cir. 2008) ...........................................................................................7, 11

*Davis v. Food Lion*,
792 F.2d 1274 (4th Cir. 1986) ....................................................................................7, 11, 12

*Diaz v. Electronic Boutique of America, Inc.*,
2005 U.S.Dist. LEXIS 30382 (W.D.N.Y. 2005) .........................................................................3

*Flores v. The Pinnacle Group*,
2007 U. S. Dist. [LEXIS 18394] (S.D.N.Y. 2007) ...................................................................4

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
646 F.2d 413 (9th Cir. 1981) ..........................................................................7, 10, 11, 12

*Gallegos v. The Brandeis School*,
189 F.R.D. 256, 259 (E.D.N.Y. 1999) ..................................................................................2

*Grochowski v. Phoenix Const.*,
318 F.3d 80 (2d Cir. 2003) ...................................................................................................6

*Harvill v. Westward Commc'ns LLC*,
311 F. Supp. 2d, 573 (E.D. Tex. 2004) *Aff'd* 433 F.3d 428 (5th Cir. 2005)...........................7

*Holzapfel v. Town of Newburgh*,
145 F.3d 516 (2d. Cir. 1998) ........................................................................................7, 11

*Kaplan v. Aspen Knolls Corp.*,
290 F.Supp.2d 335, 339 (E.D.N.Y. 2003) ..............................................................................2

HOU:2980960.1

*McKnight v. Kimberly Clark Corp.*,
149 F.3d 1125 (10th Cir. 1999) ...............................................................11, 12

*Newton v. City of Henderson*,
47 F.3d 746 (5th Cir. 1995) ...............................................................7, 11, 12

*Noble v. University Place Corp.*,
224 F.R.D. 330 (S.D.N.Y. 2004) .....................................................................3

*Reich v. Depart. of Conservation & Natural Res.*,
28 F.3d 1076 (11th Cir. 1996) .........................................................................7

*Reich v. New York City Transit Auth.*,
45 F.3d 646 (2d Cir. 1995) ..............................................................................6

*Seever v. Carrols Corp.*,
528 F. Supp. 2d 159 (W.D.N.Y. 2007) ..........................................................11

*Slattery v. HCA Wesley Rehab. Hosp., Inc.*,
83 F. Supp. 2d 1224 (D. Kan. 2000).................................................................9

*Tran v. Tran*,
860 F. Supp. 91 (S.D.N.Y. 1993) *affirmed in relevant part*, 54 F.3d 115
(2d Cir. 1995) ..........................................................................................4, 5, 6

*Vera v. Saks & Co.*,
218 F. Supp. 2d 490 (S.D. N.Y. 2002) ......................................................4, 6

*Zaitsev v. Saloman Brothers, Inc.*,
60 F.3d 1001, 1004 (2d Cir 1995) ...........................................................2, 4, 5

*Zheng v. Liberty Apparel Co., Inc.*,
355 F.3d 61, 78 (2d Cir. 2003) ...................................................................2, 6

## STATE CASES

*Edwards v. Jet Blue Airways Corp.*,
852 N.Y.S.2d 724, 727 (Sup. 2008) .................................................................3

*Firtell v. Update, Inc.*,
851 N.Y.S.2d 57 (Sup. 2007) ...........................................................................4

*Jara v. Strong Steel Door, Inc.*,
20 Misc. 3d 1135(A), 872 N.Y.S.2d 691, 2008 WL 3823769 (Sup. 2008)...............................3

*Kettler v. Fleming*,
820 N.Y.S.2d 348 (3rd Dept. 2006).................................................................2

iv

*Tierney v. Capricorn Investors, L.P.*,
    189 A.2d 629, 632, 532 N.Y.S.2d 700, 703 (1st Dept.)
    *appeal denied*, 599 N.Y.S.2d 804 (1993) ...........................................................................2, 4

## FEDERAL STATUTES

29 C.F.R. § 785.12 ...............................................................................................................7
29 U.S.C. § 203(d) ...............................................................................................................2
29 U.S.C. § 207(a) (1) ........................................................................................................11

## STATE STATUTES

N.Y. Lab. Law § 190, *et seq.* ...........................................................................1, 2, 3, 4, 5, 6, 15
N.Y. Lab. Law § 650, *et seq.* ...........................................................................................3

HOU:2980960.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



| | | |
|---|---|---|
| JENNY JOZA, | § | |
| | § | |
| Plaintiff, | § | CASE NO. 07-CV-4153 |
| vs. | § | |
| | § | |
| WW JFK LLC, dba, RAMADA PLAZA HOTEL; | § | |
| and, as individuals, MARY BIRMINGHAM, ALI | § | |
| CHIANI, ROBERT SANTUCCI, and RENE | § | |
| PEREIRA, | § | |
| | § | |
| Defendants. | § | |

### DEFENDANTS' RESPONSE TO PLAINTIFF'S POST-TRIAL MEMORANDUM

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants, WW JFK LLC, d/b/a RAMADA PLAZA HOTEL (the "Hotel"), MARY BIRMINGHAM, ALI CHIANI, ROBERT SANTUCCI, and RENE PEREIRA (collectively, "Defendants"), and file this Response to Plaintiff's Post-Trial Memorandum ("Response"), and would respectfully show the following:

## I.
## INTRODUCTION

This lawsuit was tried to the Court, and the parties have filed briefs.  Defendants file this Response to address some, but not all, of the representations found in Plaintiff Jenny Joza's Post-Trial Memorandum, and to note that Joza has abandoned any pretense of arguing that Section 190 *et seq.* of the New York Labor Laws authorizes her state law claims.

## II.
## ARGUMENT AND AUTHORITIES

**A.     Joza has abandoned all pretense of arguing that NYLL Section 190 *et seq.* (i.e., Article 6) authorizes her wage and overtime claims under New York law.**

Both prior to, and during, the trial in this lawsuit, Joza and her counsel vehemently asserted that NYLL Section 190 *et seq.* (i.e., Article 6) authorized, and provided the statutory

basis for, her state law claims seeking straight time and overtime wages for hours that she allegedly worked without receiving compensation.  With one minor exception, however, Joza's Post-Trial Memorandum does not mention the provisions that actually comprise Article 6.[1]

Indeed, Joza has made no attempt to explain which of the substantive provisions of Section 190 *et seq.* were violated by Defendants so as to authorize the awarding of relief under Section 198.[2]  *Kaplan v. Aspen Knolls Corp.*, 290 F.Supp.2d 335, 339 (E.D.N.Y. 2003); *Kettler v. Fleming,* 820 N.Y.S.2d 348 (3rd Dept. 2006); *Gallegos v. The Brandeis School*, 189 F.R.D. 256, 259 (E.D.N.Y. 1999).  Nor has she made any effort to explain the contractual basis for her alleged entitlement to what she seeks to recover; much less explain how any such alleged contract could be anything other than the collective bargaining agreement in evidence in this lawsuit.  *Zaitsev v. Saloman Brothers, Inc.*, 60 F.3d 1001, 1004 (2d Cir 1995) (dismissing claim for wages brought under Section 190 *et seq.* because of lack of proof of enforceable contract right to such wages), citing *Tierney v. Capricorn Investors, L.P.*, 189 A.2d 629, 632, 532 N.Y.S.2d 700, 703 (1st Dept.) *appeal denied*, 599 N.Y.S.2d 804 (1993) ("the plaintiff cannot assert a statutory claim to wages under the Labor Law if he has no enforceable contractual right to those wages); *Firtell v. Update, Inc.*, 851 N.Y.S.2d 57 (Sup. 2007) (dismissing claim for wages brought under Section 190 *et seq.* because of lack of proof of enforceable contract right to such wages).

---

[1] The lone reference is to the definition of "employer" found at NYLL Section 190(3).  *See* Joza's Post-Trial Memorandum at p. 9.  Moreover, Joza's suggestion that the definition of employer found at Section 190(3) is the same as that found in the FLSA is simply wrong.  The definition found at Section 190 (3) does not include includes "persons acting in the interest of an employer" in the definition of "employer."  *Compare* 29 USC § 203(d) and Section 190(3).  *See also Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61, 79 (2d Cir. 2003).  Because of this distinction, none of the individual Defendants in this lawsuit could qualify as "employers" for purposes of Joza's state law claims.

[2] Article 6 contains substantive provisions that address: (a) the frequency of wage payment (Section 191); (b) the payment of sales commissions (Sections 191-B & 191-C); (c) the payment of wages in cash versus direct deposit (Section 192); (d) the making of deductions from wages (Section 193); (e) sex-based wage differentials (Section 194); (f) employee gratuities (Section 196-D); and (g) kickbacks.

In an implicit acknowledgement that the statute upon which she relies does not authorize her state law claims, Joza peppers her post-trial briefing with generic references to the "New York Labor Law" or the "NYLL" without any discussion of NYLL Section 190 *et seq.*[3]  Also, she cites to: (a) other New York statutory provisions; (b) New York regulations that have no application to NYLL Section 190 *et seq.*; and (c) New York regulations that do not appear to exist or that apply to industries not at issue in this lawsuit.  For instance, she cites to NYLL Sections 651(6), 663(1) & 663(3) even though they are not part of NYLL Section 190 *et seq.*  Likewise, she cites to N.Y. Comp. Codes R. & Regs, Title 12, Sections 13-1.3[4], 142-2.2[5]& 137-2.1(a)[6] even though those regulatory provisions either do not exist, or were enacted under, and apply to, other sections of the New York Labor Laws.  Similarly, Joza cites to cases that do **not** involve claims brought under NYLL 190 *et seq.*

**B.    Joza's anti-preemption argument ignores the facts and establishes that her state law claims are invalid.**

Although she ignores the threshold question of whether NYLL Section 190 *et seq.* even authorizes her state law claims, Joza does address the preemption question.  In particular, she argues that her claims under NYLL Section 190 *et seq.* are not preempted because "she does *not*

---

[3] In contrast, Defendants have carefully explained how and why NYLL Section 190 *et seq.* does not, and cannot, authorize and provide any basis for Joza's  state law claims.

[4] There appears to be no such regulation.

[5] 12 N.Y.C.R.R. § 142-2.2 is a regulation that was adopted, and is enforceable, under NYLL Section 650 *et seq.*; not under NYLL Section 190 *et seq.*  In particular, Section 655(5)(B) authorized the New York State Minimum Wage Board to recommend that the State Commission of Labor promulgate overtime rate regulations.  *See, e.g., Edwards v. Jet Blue Airways Corp.*, 852 N.Y.S.2d 724, 727 (Sup. 2008).  After the Wage Board made such a recommendation, the Commissioner of Labor enacted 12 N.Y.C.R.R. 142-2.2; which requires overtime compensation for hours worked in excess of 40 in a week.  *Id.*  These regulations are recognized as being are enforceable in an action brought under Section 650 *et seq*.  *See Diaz v. Electronic Boutique of America, Inc.*, 2005 U.S.Dist. LEXIS 30382 (W.D.N.Y. 2005).  *See also Noble v. University Place Corp.*, 224 F.R.D. 330 & n. 85 (S.D.N.Y. 2004); *Jara v. Strong Steel Door, Inc.*, 20 Misc. 3d 1135(A), 872 N.Y.S.2d 691, 2008 WL 3823769 (Sup. 2008) (same).

[6] This regulation only applies to employers of employees in the restaurant industry.  N.Y. Comp. Codes R. & Regs, Title 12, Section 137-1.1.  Of course, Joza was never a restaurant industry employee.

seek to enforce the wage provisions of the CBA," and is merely seeking to "recover unpaid wages and overtime owed to her under [the] NYLL and FLSA."[7]   *See* Joza's Post-Trial Memorandum at pp. 3-9.  In support thereof, Joza argues that NYLL "requires that she be paid the regular rate of compensation, not that contained in the CBA."  *Id.* at p. 8.

Joza's argument ignores the fact that there is no statutory "regular rate of compensation," and that resolving her state law claims necessarily requires analysis of the CBA; not merely to establish her "regular" wage rate, but also to address the overtime provisions of the CBA, and to determine the Hotel's right to require employees to follow overtime reporting procedures.  *See, e.g., Vera, supra* at 335 F.3d 115 & n.1.[8]   Moreover, even if her argument is right, it establishes that her state law claims must fail as a matter of law because they lack a contractual basis, and claims brought under Section 190 et seq. must be based upon an enforceable contract right.  *See, e.g., Zaitsev, supra* at 60 F.3d 1004; *Tierney, supra* at 532 N.Y.S.2d 703; *Firtell, supra* at 851 N.Y.S.2d 57.  Joza simply cannot have it both ways – her state law claims either are, or are not, contract based, and they are either preempted or not cognizable under Section 190 *et seq.*

Joza generally ignores and/or misrepresents the holdings in *Tran v. Tran*, 860 F.Supp. 91 (S.D. N.Y. 1993), *affirmed in relevant part*, 54 F.3d 115, 118 (2d Cir. 1995); *Vera v. Saks & Co.*, 218 F.Supp.2d 490 (S.D. N.Y. 2002), *affirmed*, 335 F.3d 109 (2nd Cir. 2003), and *Flores v. The Pinnacle Group, et al.*, 2007 U.S. Dist. Lexis 18394 (S.D. N.Y. 2007).  As noted by Defendants

---

[7] Although the United States Supreme Court's decision in *14 Penn Plaza LLC v. Pyett*, ___ U.S. ___; 129 S. Ct. 1456 (April 1, 2009) raises interesting questions about the viability of even Joza's FLSA claims in light of her admitted failure to follow the CBA's dispute resolution procedures, the preemption question in this lawsuit is whether Joza's state law claims are preempted.

[8] For instance, the CBA provides that "[n]o employee shall receive overtime pay unless such overtime work has been authorized previously by such employee's department or division manager."  Ex. A at p. 11.  Given Joza's admission that the alleged overtime work at issue in this lawsuit was not "previously authorized," the CBA expressly precludes her from receiving the very wages that she is seeking to recover under Section 190 *et seq.*  The fact that there may be questions about the enforceability of such a collectively bargained contract clause only underscores the fact that resolution of Joza's state law claims necessarily requires, and is dependent upon, an analysis of the CBA.

4

in their prior briefing, all of these cases involved the dismissal of wage claims brought under NYLL Section 190 *et seq.* because the plaintiffs were union members who had failed to first attempt to resolve their claims by use of the dispute resolution procedures found in the CBA governing their employment.[9]

For instance, Joza argues that *Flores* merely involved a "contract grievance" and/or "wage claim that arose directly from the CBA." *See* Joza's Post-Trial Memorandum at pp. 7-8. In fact, like Joza, the plaintiff in *Flores* brought a *statutory claim* for unpaid wages under NYLL Section 190 *et seq.*—the very statute relied upon by Joza. Because the plaintiff was a member of a collective bargaining unit, and "did not grieve the issue before his union as required by the CBA," the Court dismissed the NYLL claims brought by the plaintiff. *Id.*[10]

With respect to the Second Circuit's decision in *Tran*, Joza argues that only the "non-wage hour claims" were dismissed, and that what she calls "statutorily mandated wage hour claims" were not dismissed. *See* Joza's Post-Trial Memorandum at p. 7. She then suggests that her claims under NYLL Section 190 *et seq.* fall into the latter category. *Id.* In fact, like Joza, the plaintiff in *Tran* was a hotel employees who brought a *statutory claim* to both recover straight and overtime wages under NYLL Section 190 *et seq.*, and overtime wages under the FLSA; but had failed to "attempt to grieve or seek to arbitrate [their] disputes with defendants as required" by the CBA. The district court dismissed all of the plaintiff's claims as a result of the failure to grieve first, but the Second Circuit affirmed the district court's conclusion with respect to only certain claims – <u>including the state law claims brought under NYLL Section 190 *et seq.*</u> – and

---

[9] The cases cited by Joza do not involve claims brought under NYLL Section 190 *et seq.* This is important to the preemption analysis because claims brought under NYLL Section 190 *et seq.* are not viable unless they are based upon an enforceable contract right. *Zaitsev, supra* at 60 F.3d 1004.

[10] Although not discussed in the opinion, one must presume that the *Flores* Court was aware that claims brought under NYLL Section 190 *et seq.* are not viable unless they are based upon an enforceable contract right. *Zaitsev, supra* at 60 F.3d 1004.

reversed the district court with respect to the FLSA claims.  Semantics aside, the result in *Tran* makes clear that neither the district court nor the Second Circuit subscribed to Joza's argument that NYLL Section 190 *et seq.* claims are so-called "statutorily mandated wage hour claims" that are somehow immune from being preempted.[11]

For the reasons discussed in the *Tran*, *Vera*, and *Flores* opinions, Joza's state law claims are preempted by federal labor law, and must be dismissed.  To paraphrase the opinion of the district court in *Tran,* Joza's state law claims for wages concerns alleged "acts, conduct or relations between the parties" to the CBA, and involve the "application" of various "clause[s] of" the CBA to the parties and their actions.

**C.     Joza has mischaracterized the evidence in support of her FLSA claims and misunderstands the law applicable to her FLSA claims.[12]**

Although Joza devotes the bulk of her Post-Trial Memorandum to arguing that she performed work for Defendants for which she was not properly compensated, she unexpectedly fails to address a key issue.  *See* Plaintiff's Post-Trial Memorandum at pp. 14-43.  In particular, she makes no attempt to argue that her alleged overtime constituted "work" as that term is defined for purposes of the FLSA.  *See Reich v. New York City Transit Authority*, 45 F.3d 646, 651 (2d Cir. 1995) (defining work as "physical or mental exertion" that is "controlled or required" by the employer and "pursued necessarily and primarily for the benefit" of the employer.).  Nowhere does Joza argue that her alleged extra, unreported efforts and exertions were "controlled or required" by Defendants, much less "pursued necessarily and primarily for

---

[11] Again, although not mentioned in either court's opinions, one must presume that both the district court and the Second Circuit were aware that claims brought under NYLL Section 190 *et seq.* are not viable unless they are based upon an enforceable contract right.

[12] To the extent that Joza has valid state law claims, and those state law claims are not preempted, then they generally consist of the same elements and are subject to the same burden of proof found under the FLSA.  *See Grochowski v. Phoenix Construction*, 318 F.3d 80, 87 (2d Cir. 2003); *see also Zheng v. Liberty Apparel Co., Inc.,* 355 F.3d 61, 78 (2d Cir. 2003).  The one exception is with respect to the scope of the term "employer," which, as discussed below, is defined far more broadly in the FLSA than it is in NYLL Section 190.

the benefit" of Defendants.   Consequently, she makes no effort to address the evidence, including her own testimony, that her alleged extra efforts were controlled by herself and were, if anything, to benefit herself and her own "nature."[13]

Joza does recognize that she has the burden of showing that Defendants knew, or should have known, that she was allegedly working extra, unreported overtime,[14] and argues that she has met this burden because her time records show that she was, at certain times, on the Hotel premises for longer than her assigned shift.   *See* Joza's Post-Trial Memorandum at p. 36-43. Indeed, citing to *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d. Cir. 2008), Joza argues that her time card records establish, as a matter of law, that Defendants knew or should have known that she was working extra, unreported overtime.   For both legal and factual reasons, *Chao* is inapplicable to the situation herein.

Unlike this case, *Chao* did not involve *unreported* overtime.   Rather, it involved employees (nurses) who accurately reported all of the overtime that they had worked on their employer's overtime forms.   *Id.* at 514 F.2d 283-84.   The issue was whether the employer could refuse to pay overtime wages for any overtime work that had not been pre-authorized because the employer's policy strictly forbid employees to work unauthorized overtime.   *Id.*   Finding that the employer had ample knowledge that the employees were working overtime for which they

---

[13] Joza admitted that the alleged extra overtime was worked at her own discretion, without informing Defendants, and that the tasks she performed were tasks that could, and would, have been performed by other reservationists, or even by herself the following day, if she had left them.   R. 111/12-19, 115/3-16.   She further explained that she performed these extra tasks because it was in her "nature" to do so; not because she had been required, told or asked to do so by Defendants, and not because there was some urgent and compelling business need to do so immediately.[13]   R. 18/10-18; 70/2-10.

[14] *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d. Cir. 1998) ("an employer cannot suffer or permit an employee to perform services about which the employer knows nothing.").   *See also Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995); *Harvill v. Westward Communications LLC*, 311 F.Supp.2d 573, 583 (E.D. Tex. 2004); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.1981) (explaining that knowledge affords employer the opportunity to comply with the Act); *Reich v. Department of Conservation & Natural Resources*, 28 F. 3d 1076, 1082 (11th Cir. 1996); *Davis v. Food Lion*, 792 F.2d 1274, 1276-77 (4th Cir. 1986).   *See also* 29 C.F.R. Section 785.12 (requiring proof of employer knowledge before liability attaches).

had not received overtime compensation – not surprising since the overtime work had all been reported on overtime forms – the Second Circuit concluded that the employer's policy violated the FLSA and that the employer was obligated to pay overtime for the overtime hours worked; regardless of whether it had been pre-authorized.

Unlike *Chao*, Joza's claims concern alleged extra overtime that she admittedly failed to report to Defendants.  Moreover, the time clock records reflected an employee's time on the Hotel premises; not an employee's time working.[15]  Thus, although they provided a rudimentary basis on which to check on whether employees were working their assigned shifts,[16] they were not an accurate measurement of actual hours worked, and they were not used to record overtime worked.[17]  Instead, the Hotel relied upon overtime forms on which employees were to report all overtime hours worked.  With respect to Joza, the time clock records were particularly unhelpful in recording her overtime hours worked because it was well known that she stayed on the Hotel premises following the end of her shift, without having punched out, while awaiting a ride home.  Moreover, while she now claims that she was working while awaiting a ride home, the

---

[15] For instance, it was undisputed that employees did not punch out for lunch unless they left the premises.  Also, Joza testified that she sometimes forgot to punch out when she left.

[16] For instance, an employee scheduled to work 35 hours in a given week would be expected to have been "on the premises" for 40 hours *plus* whatever time would have lapsed each day that week between punching in and starting work and ending work and punching out.  If one allowed up to 15 minutes between punching in and starting work and ending work and punching out, an employee scheduled to work 35 hours in a week would be expected to be on site for up to 42.50 hours without having worked any overtime; i.e., 35 hours of work; 5 hours of lunch breaks, and up to 2.5 hours of pre- and post-shift time "on the clock."  Joza's weekly time records shows that she was rarely on site for more than 42.5 hours in any given week.  Exs. T-Y.

[17] Joza's managers did inquire of her, pursuant to Hotel policy, whether she had worked overtime whenever her weekly time clock records indicated that she had been on site for longer than expected, and that she was paid overtime every time that she actually indicated that she had worked overtime, and was not paid overtime when she indicated that she had not worked overtime.  R. 102/19-104/7; 555/11-20; 556/1-12; 586/8-12; 599/8-600/9; 621/18-622/12.  On those occasions when Joza reported that she had worked overtime, her supervisors made certain that an overtime form was submitted on her behalf, and she was paid.  R. 556/13-24.  On those occasions when Joza said that she had not worked overtime (and offered explanations ranging from having failed to clock out when she left for a doctor's appointment to having been on site waiting for a ride), her supervisors and the Hotel relied upon her response, and her failure to submit an overtime form, in not paying her any overtime.  R. 587/22-25; 601/13-602/2.

Defendants understood that Joza was simply awaiting a ride home.[18]   R. 622/6-16; 658/1-4. Indeed, except for those documented occasions when Joza submitted an overtime form and received overtime pay, the Defendants were not aware of any instances when Joza worked beyond the end of her shift.[19]  R. 603/22-25.

In *Slattery v. HCA Wesley Rehab. Hosp., Inc.*, 83 F.Supp.2d 1224, 1230 (D. Kan. 2000), the District Court granted summary judgment against an employee who was claiming that the employer should have known that she was working additional overtime hours because "other workers saw her at work after hours."  *Id.* at 83 F.Supp.2d 1230-31.  The district court noted that there was evidence that the plaintiff "performed personal tasks while she was at work after hours," and, thus, found that the fact that "coworkers may have seen her on the premises after hours" would not have created an inference that she was working.  *Id.*

That Joza frequently stayed on the Hotel premises after her shift had ended did not and should not have caused anyone to believe that she was "working" because she herself explained, and it was well known, that she waited after work to get a ride home from her son, or to provide a ride home to her sister, as often as 3 or 4 times a week.  R. 58/12-59/6; 60/10-18.  Moreover, the Defendants' anecdotal observations of Joza tending to personal matters while waiting for a ride would have only reinforced the understanding that she was not working.  Thus, assuming, *arguendo*, that Joza was actually performing any job-related tasks during this time, the simple fact is that none of the Defendants were aware of it, or had any reason to know about it.

---

[18] In large part, this understanding came from the fact that Joza told the Defendants, when they asked, that she was waiting for a ride.  R. 601/25-602/2; 622/6-13; 624/21-625/3; 625/20-23.  Joza herself admitted that this is what she actually told the Defendants.  R. 58/24-59/6; 172/2-25.

[19] Moreover, their occasional observations of Joza when she was at the Hotel after her shift waiting for a ride involved seeing her reading, watching DVD movies on her laptop computer, surfing the Internet on her laptop computer, and talking on the telephone, and otherwise engaged in personal, not work, activities.  There is simply no evidence that any of the Defendants ever saw, observed, or otherwise became aware of Joza doing any "work" during her lunch hour or outside of her regular hours – except on those occasions when an overtime form was completed and she was paid her overtime compensation.

With respect to whether she has satisfied her burden of proof, Joza argues that she may rely "*solely* on recollection" to satisfy her burden of proof under the FLSA because Defendants allegedly failed "to keep adequate and accurate records."[20]   *See* Plaintiff's Post-Trial Memorandum at pp. 14-15.   Although Joza simply declares this principle to be applicable, without explaining how Defendants failed to satisfy their statutory record keeping obligations under the FLSA,[21] the implication is that employers may not rely upon employees to accurately and truthfully report their overtime hours worked, and must, instead, use surveillance and other tactics to ensure that employees do not work extra, unreported overtime hours.   Fortunately, Joza's argument finds no support in the language of the FLSA, and it flies in the face of the reported opinions addressing this issue.

For instance, in *Forrester v. Roth's IGA Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981), the employee was aware that overtime was supposed to be reported, and that the employer "regularly paid for such reported overtime." *Id.* at 414.   Like Joza, the employee had regularly submitted such overtime forms and had been "paid for all of the overtime he reported;" and had not mentioned any allegedly "unpaid overtime work to any store official prior to filing his complaint." *Id.*   In rejecting the employee's FLSA claims, the Court of Appeals explained:

> [a]n employer must have an opportunity to comply with the provisions of the FLSA.   This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation. However, where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime

---

[20] Joza cites to NYLL Sections 196-a for the proposition that a similar burden shift occurs under New York law. However, that provision only applies to administrative complaints and proceedings before the Commissioner; not to lawsuits.

[21] The evidence established that all hourly employees, including Joza, were required to:  (a) punch in whenever they arrived at the hotel premises; (b) punch out whenever they left the hotel premises; and (c) report all extra, unscheduled, or overtime hours that they worked on an overtime form.   The evidence, including Joza's own testimony, further established that she was aware, and made frequent use, of these procedures to report overtime work and to collect overtime pay, and that the Defendants relied upon these procedures to record hours worked and to compensate employees.

> hours, the employer cannot be said to have suffered or permitted
> the employee to work in violation of [§] 207(a).

*Id.* at 414-15.[22]

*Newton v. City of Henderson*, 47 F.3d 746 (5th Cir. 1995) also involved an employee who was aware of the policy requiring that overtime be reported and the payroll form used to report overtime hours worked, but never reported the alleged extra overtime for which he was seeking compensation. *Id.* at 749. In rejecting the employee's FLSA claims, the Court of Appeals stated:

> [i]f we were to hold that the city had constructive knowledge that
> Newton was working overtime because Freeman had the ability to
> investigate whether or not Newton was truthfully filling out the
> City's payroll forms, we would essentially be stating that the City
> did not have the right to require an employee to adhere to its
> procedures for claiming overtime.

*Id.* at 749.[23]

More recently, in *Seever v. Carrols Corp.*, 528 F.Supp.2d 159, 166 (W.D.N.Y. 2007), the plaintiff/employees had been paid overtime for all of the overtime hours actually reported by them, and the court found that the alleged inaccuracies in the employer's records were "solely due to the [employee's] deliberate failure to accurately report the time they worked," *Id.*; citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). In rejecting the "burden-shifting" argument that is now being advanced by Joza, the district court explained that accepting such an argument would mean that "any plaintiff wishing to take advantage of the lesser burden of proof

---

[22] The Second Circuit has cited with approval to the *Forrester* opinion for the proposition that "[f]or compensation to be awarded, plaintiff's activities must not only satisfy the above definition of work, but must also be performed with the employer's knowledge." *Holzapfel, supra* at 145 F.3d 524; *Chao, supra*, at 514 F.3d 288.

[23] *See also Davis, supra* at 792 F.2d 1276-78 (4th Cir. 1986) (rejecting overtime claim of employee who failed to report alleged overtime); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1999) ("Plaintiff admitted that he was paid for the overtime hours he included on his time sheet, and that uncompensated time was the result of his failure to adequately record his time." Such failure to record claimed time is fatal to a later claim for such, if the company has no reason to be aware of the overtime."); *Brumbelow v. Quality Mills, Inc.*, 462 F. 2d 1324, 1327 (5th Cir. 1972) (applying estoppel principles to reject the overtime claim of an employee who had failed to report the alleged additional overtime on the time forms that she had submitted).

[in *Mt. Clemens*]…need do nothing more than fabricate an admission that he 'lied' on his time records, thereby rendering the employer's FLSA-compliant records useless and the employer, through no fault of its own, defenseless to refute the employee's 'recollection.'" *Id.*

The courts in *Forrester*, *Newton*, *Seever* and other cases were all rightfully unwilling to interpret the FLSA so as to reward employees who simply fail to report overtime when they had a reasonable opportunity to do so, and that principle applies with equal, if not greater, force in this case. Moreover, each of those cases established the principle that may, consistent with their record-keeping and other obligations under the FLSA, require employees to follow and adhere to reasonable procedures for reporting overtime worked, and may rely upon what employees do, and do not, report. *Id. See also Forrester, supra* at 646 F.2d 414, *Newton, supra* at 47 F.3d 749; *Davis, supra* at 792 F.2d 1276-78; *McKnight, supra* at 149 F.3d 1130. In the words of the Ninth Circuit, an employer "must have an opportunity to comply with the provisions of the FLSA," and "where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of" the FLSA's overtime requirements. *Id.* at 646 F.2d 414-15.

The vast majority of Joza's Post-Trial Memorandum is devoted to "characterizing" the testimony at trial. Almost always her characterizations are inaccurate, and seemed designed to mislead this Court. Given that the Court actually heard the testimony, and has the transcript available to review, it seems unlikely that a point by point rebuttal is necessary, or productive. However, a few examples will suffice to show the extent to which Joza alters the facts for purposes of her arguments.

For instance, to support her argument that Chiani had placed an embargo "on overtime payments" (but not overtime work), Joza states that "Pereira and Birmingham both admitted that they had heard Chiani warn managers to refrain from authorizing overtime." *See* Joza's Post-

Trial Memorandum at p. 16.  However, a review of the transcript pages cited by Joza reveals that Pereira testified that he had overheard Chiani "tell managers to watch the overtime" and that Birmingham testified that Chiani had once "cautioned [her] to be careful about handing out overtime."

In another example, Joza argues that the "true policy of the hotel was that if overtime was not *pre-authorized* then employees would *not be paid* for it retrospectively," and cites to the testimony of Coreen Brown in support of this argument.  *See* Joza's Post-Trial Memorandum at p. 17 (emphasis in original).  In fact, Brown's testimony about her understanding of the overtime policy was far more ambivalent that Joza suggests.[24]  Moreover, and more importantly, it is undisputed that Brown was never Joza's supervisor, and that Joza has never even claimed (much less offered any evidence) that any of her alleged extra overtime at issue in this lawsuit was reported by her but not paid because of some alleged pre-authorization policy.[25]  Indeed, Joza herself admitted that she habitually turned in overtime forms for overtime work that had not been pre-authorized, and was paid in full for every moment of overtime that she ever reported, and that no one ever failed to authorize or pay for her reported overtime; whether it was pre-authorized or not.  Whether Ms. Brown did, or did not, have an accurate understanding of the overtime policy is of no consequence to Joza's claims.

Throughout much of her Post-Trial Memorandum, Joza argues that she has proven her claim because various co-workers testified that they had seen her, on occasion, working at her

---

[24] A review of Ms. Brown's testimony reveals that she was asked a series of poorly worded questions from which Joza now quotes selectively.  The questions began with Ms. Brown clearly saying "I wouldn't say that, no" when asked whether it was her "understanding is if it wasn't authorized by a manager in someone wouldn't get paid for it."  R. 531/11-13.  She later said that it "depends on the situation" when asked about the policy if someone who showed an extra hour of work but had no overtime sheet "went to a manager and said actually I was working for that extra hour."  R. 533/1-11.

[25] To be clear, every one of the Defendants, as well as Joza and her sister, testified that all reported overtime was paid – even  when it was not pre-authorized.

desk during her typical lunch hour and/or after the end of her usual shift.  However, such testimony does not establish that she ever worked more than her assigned number of hours on any given day; much less more than forty hours in any given week.  Indeed, the fact that Joza might have been observed to be working during part of her typical lunch hour, or outside of her regular shift, is probative of nothing more than that.  It does not, logically or legally, mean that she did not take lunch at an earlier or later time, or that she did not work through lunch or outside of her shift so that she could leave early and/or come in late on that or another day, or that she did not work through lunch or outside of her shift because she had left during the day for a personal appointment.[26]  Moreover, it is particularly unhelpful testimony in light of the fact that Joza periodically did report, and did get paid for, overtime working during her lunch hour, or after her shift.

Simply put, Joza did not prove that she performed any extra overtime "work" for which she was not compensated, much less that Defendants knew or should have known about her extra overtime work.  On the contrary, in fact, the evidence established that Joza failed to notify Defendants about, and prevented Defendants from acquiring knowledge of, her alleged extra overtime work.  Also, Joza failed to introduce evidence "sufficient to show the amount and extent of [her alleged extra overtime] work as a matter of just and reasonable inference."  Rather, she offered only her own testimonial estimates, and the evidence clearly showed that the hours she "claimed" to have worked were grossly "exaggerated," had no factual basis, and were belied by credible evidence – including her own overtime forms, and her initial, handwritten estimates of the hours worked in excess of 35.  The evidence further established that Joza was paid for all

---

[26] Joza herself testified that she sometimes took lunch at other than normal times, that she sometimes worked through lunch so that she could leave early or come in late on another day that week, and that she sometimes worked past her regular shift when she had left during the day for things like medical appointments.

overtime work she actually reported, and was never prevented from reporting and being paid for extra overtime work beyond that which she reported.

## III.
## CONCLUSION AND PRAYER

As described herein, (a) Section 190 *et seq.* of the NYLL does not provide a cause of action for allegedly unpaid overtime; (b) Joza's claims under Section 190 *et seq.* of the NYLL claims are preempted or otherwise precluded by federal labor law; (c) Joza has not met the burden of proof under the FLSA; (d) there is no evidence that Joza actually worked any additional, unreported overtime hours; (e) there is no evidence that Defendants suffered or permitted Joza to work any additional, unreported overtime hours; (f) to the extent that Joza worked additional overtime hours, the evidence is conclusive that she intentionally failed to report that fact to Defendants; (g) there is no evidence that the individual Defendants are "employers," as that term is defined under the FLSA; and (h) there is no evidence that any alleged violation of the FLSA or New York state law provisions regarding overtime was willful.

WHEREFORE PREMISES CONSIDERED, Defendants WW JFK LLC, d/b/a Ramada Plaza Hotel, Mary Birmingham, Ali Chiani, Robert Santucci, and Rene Pereira are not liable to Plaintiff Jenny Joza for any unpaid overtime, or any other damages or relief, legal or equitable, sought by Joza.

Respectfully submitted,

ANDREWS KURTH LLP

By: _/s/ Matthew L. Hoeg_

      Matthew L. Hoeg
      State Bar No 09772880
      600 Travis, Suite 4200
      Houston, Texas  77002
      Telephone:  (713) 220-4012
      Facsimile:  (713) 238-7428

ATTORNEYS FOR DEFENDANTS,
WW JFK LLC, d/b/a RAMADA PLAZA HOTEL,
MARY BIRMINGHAM, ALI CHIANI, ROBERT
SANTUCCI, and RENE PEREIRA

OF COUNSEL:
Joseph Patella
ANDREWS KURTH LLP
450 Lexington Ave., 15th Floor
New York, New York 10017

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of December, 2009, I caused to be electronically filed the foregoing Defendants' Response to Plaintiff's Post-Trial Memorandum with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to:

Lee Seham: ssmpls@aol.com

Lucas Keith Middlebrook: lmiddlebrook@ssmplaw.com

Stanley Silverstone: ssilverstone@ssmplaw.com

Susan Tracy Edwards: sedwards@ssmplaw.com

_/s/ Matthew L. Hoeg_
Matthew L. Hoeg