UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
JENNY JOZA,

                                Plaintiff,

           -against-

WW JFK LLC, dba, RAMADA PLAZA HOTEL
(current name HIGHGATE JFK LLC);
and, as individuals, MARY BIRMINGHAM, ALI
CHIANI, ROBERT SANTUCCI, and RENE
PEREIRA,

                                Defendants.
---------------------------------------------------------------x

MEMORANDUM & ORDER

07-CV-4153 (ENV)(JO)

VITALIANO, D.J.

This is an action for unpaid overtime compensation brought, pursuant to federal and state wage and hour laws, by a hotel employee against her corporate employer and certain of its individual management employees who, at various times in issue, had supervisory or other management responsibilities relating to plaintiff's employment at the hotel. The unpaid wage claims were tried to the Court, sitting without a jury, over a span of four days of testimony.

After careful consideration of the testimony, the documents received in evidence, and the arguments of counsel, the Court finds and determines that plaintiff has not carried her burden of proof and that judgment must be entered for all defendants on all claims. In accord with Rule 52 of the Federal Rules of Civil Procedure, this Memorandum and Order constitutes the Court's findings of fact and conclusions of law.

## FINDINGS OF FACT

At all times relevant to this lawsuit, plaintiff Jenny Joza was an employee of defendant Ramada Plaza Hotel ("Ramada") and worked as a hotel reservation agent. With differing

1

responsibilities, and covering differing discrete periods of her employment by Ramada, Joza was managed to some degree by individual defendants Mary Birmingham, Ali Chiani, Robert Santucci, and Rene Pereira. There is no claim, nor is there any proof, that defendants failed to pay Joza a penny of the compensation to which she was entitled by contract and/or statute for the regular time hours that she was scheduled to work, or for any of the overtime hours that she actually reported in the ordinary course that she had worked. All that was tried in this case were Joza's claims, pursuant to the federal Fair Labor Standards Act ("FLSA"), 29 §§ U.S.C. 201 et seq., and New York Labor Law ("NYLL"), §§ 190 et seq., for overtime hours she says she worked but admitted at trial that she had never reported, either formally or informally, or sought corresponding contemporaneous compensation from, any defendant.

The claims asserted by Joza temporally cover a period beginning October 4, 2001 and ending October 4, 2007. It is a period hardly coextensive with her history of employment at Ramada. Indeed, she was a long-term employee of the hotel, with approximately 26 years of service prior to the time period relevant to suit. Significantly, Joza's employment at the Ramada was also covered by a collective bargaining agreement ("CBA"), negotiated by a hotel industry trade organization, of which Ramada was a member, and the Hotel & Motel Trades Council, a labor organization affiliated with the AFL-CIO (the "union"), which represented the collective bargaining unit of which Joza was a member. Assuming for argument that it did not create an exclusive remedy encompassing even the claims tried in this case, it is clear that the CBA had established some sort of grievance procedure and that Joza did not avail herself of any opportunity to grieve her overtime claims through that process.

Consistent overall with the structure set forth in the CBA, Joza's work experience at the hotel was unremarkable. She was assigned a regular work shift, and hotel policy required her to

clock in upon arrival and clock out if she physically left the premises. (There were, however, no time clock implications under the CBA for on-premises lunch or other work breaks.) The CBA also established overtime procedures, including obtaining approval of overtime work in advance by an employee's manager, though the record convincingly demonstrates that the prior authorization requirement was routinely disregarded and overtime hours reported worked were invariably approved retroactively. But, it is equally clear that it was hotel policy under the CBA, one religiously followed by Ramada, that an employee who had worked overtime hours also had to complete a written overtime form setting forth the number of hours worked on an overtime basis, the date upon which these hours had been or were to be worked, and the reason for the overtime work. It is undisputed that, with regard to the overtime hours which are the subject of Joza's claims now, no overtime form was ever completed with respect to any of them. More to the point of Ramada's overtime compliance, Joza acknowledged that the overtime hours claimed on every overtime slip she ever submitted to hotel management was paid in full regardless of whether overtime authorization had been approved before or after she had actually worked the overtime hours. And, far more critically, Joza conceded that no Ramada manager, including those named as individual defendants in this case, ever told her not to submit overtime forms for overtime hours worked, or punished or disciplined, or threatened to punish or discipline, her, formally or informally, for working, or seeking permission to work, overtime hours. (See, e.g., Tr. at 126:9-126:15; 127:1-127:13; see also Tr. at 561:9-561:14; 639:2-639:10.) Indeed, none of the co-worker witnesses called to testify at trial by plaintiff—including plaintiff herself—had had such an adverse experience at Ramada, aside from Joza's claims here, or knew of any other Ramada employee who had. (See, e.g., Tr. at 129:14-129:22; 371:3-371:12; 394:7-394:25; see also Tr. at 221:19-221:23; 243:3-243:14; 336:15-336:25; 460:13-460:16.) In short, Joza's

attempts to spin a yarn of corporate hostility to employees filing overtime claims falls flat. For reasons that will be amplified below, the Court finds that the snippets of dialogue plaintiff claims created a culture hostile to legitimate overtime claims are no more than customary management admonitions to supervisors to watch and maintain control of work assignments in order to avoid unnecessary overtime.

In general terms, Joza credibly testified about her assigned work schedule and her physical comings and goings from the hotel. Joza offered corroborating testimony of Ramada co-workers as to her general work habits. To the extent that plaintiff relies on time and payroll records maintained by Ramada to confirm her story, these records duly confirm her presence on-site in excess of her scheduled 35 hours.[1] It is also believable that, during periods of time that Joza was present at the hotel in excess of her regularly scheduled time or during a lunch or other break period that she may have chosen to (and did) perform work that she would have otherwise performed during her ordinary scheduled work time. Such work, being part of her regular duties and functions as a reservations agent, though perhaps not worth premium pay if premium pay would be due, obviously would still have redounded to the benefit of the hotel. But, assuming for argument that some of this extra work occurred beyond the 40-hour week, Joza does not offer even a shred of documentary evidence in support of it. Any such claims stand substantiated only by her recollections at trial, which seem to be somewhat at odds with her pretrial disclosures. (See, e.g., Defense Exhibit ("Def. Ex.") 14; Tr. at 154:20-154:23; 155:10-158:10; 158:18-159:1; see also Tr. at 153:22-153:24.) Moreover, while Joza did offer corroborating observations by co-workers of her being at her desk from time to time before and after her scheduled work time, and

---

[1] The CBA established a 35-hour work week for Joza and the other employees that it covered at Ramada. The statutory right to overtime, of course, is triggered after an hourly employee within the ambit of the wage and hour laws has completed 40 hours of work in any given week. No contractual claim for any overtime worked in excess of 35 hours but fewer than 40 hours is before the Court. (In any event, under the CBA, such disputes would presumably be subject to the contract's grievance and arbitration provisions.)

4

similar observations during times lunch was normally taken by workers on the shift Joza was working, none but her sister could even come close to testifying as to (a) the overall hours worked by Joza on any given shift; (b) what, if any, overtime she claimed; and (c) what, if any, overtime compensation she had been denied. (See, e.g., Tr. at 219:22-219:24; 221:13-222:4; 222:14-223:6; 229:13-229:25; 244:10-244:22; 256:14-257:5; 276:3-276:22; 277:8-278:5; 339:1-339:10; 343:22-347:1.)

The short of it is that the bits and pieces of corroborating testimony offered by plaintiff's co-workers fail to salvage the viability of Joza's story. Putting aside the variance between her pretrial testimony and other disclosures, on the one hand, and her testimony at trial, on the other, Joza's trial recollections of a worksite overtaxed by runaway reservations during the relevant time period, making overtime the norm, is simply out of step with other evidence not seriously challenged in the record. Specifically, for example, Joza's recollection of hot and heavy work activities in the months following the September 11, 2001 attack on the World Trade Center, seemed unfazed by the far more credible evidence of a general downturn in New York's hospitality industry and the fact that the Ramada in 2002 and 2003 was 80% occupied by National Guard troops, and that the balance of the availabilities was principally filled by long-term airline crew contracts. (See Tr. at 23:1-23:10; 26:23 - 27:19; 141:1-142:9; 141:22-143:11.) Her testimony was similarly out of harmony with the fact that, following a 2003 structural accident, a full wing of the hotel had to be shut down, severely limiting room availability and, to state the obvious, the number of reservations that could be accepted and processed. (See Tr. at 591:16-593:13.) Lastly, for more than half of the weeks Joza claims she worked in excess of the statutory maximum of 40 regular time hours in a week, the very same Ramada time records on which plaintiff founds her claims establish that she was not even on the hotel premises in excess

of 40 hours.[2] (See, e.g., Tr. at 159:2-159:6; see also Tr. at 150:10-153:15; Exs. G-Z.)

There is yet other strong record support for the conclusion that Joza did not work uncompensated statutory overtime hours during the relevant time period. At the top of the list, Joza has flat out admitted that she never submitted an overtime form for any of the hours claimed in this lawsuit. (See, e.g., Tr. at 67:12-67:14; 103:21-103:24; 202:24-203:19; see also Tr. at 20:11-20:19; 45:7-45:17; 56:4-56:9; 84:5-84:7; 106:17-106:22.) She also acknowledged that she had not been asked by any manager to work any of those overtime hours and that she did not inform Ramada or any individual defendant that she had ever worked a minute of the extra overtime for which she seeks compensation, plus penalty and/or interest, in this lawsuit. (See, e.g., Tr. at 203:7-203:16.) She never took her grievance about the workplace culture of hostility to overtime or the failure to be paid overtime as required by contract or law to the union, (see, e.g., Tr. at 68:11-68:19; 183:17-183:19), nor did she make any such complaints to her supervisors or other Ramada management. (See, e.g., Tr. at 104:4-104:7.) In fact, when asked by supervisor Santucci if she had worked additional overtime hours, she denied working the very overtime hours she now claims she worked for him, (see Tr. at 624:21-625:3; see also Tr. at 67:5-67:14; 172:2-172:8); nor did the culture of hostility to overtime claims actually prevent her from making the overtime claims she did make, all of which were paid. (See, e.g., Tr. at 127:1-127:17; 129:1-129:9; 150:10-153:15; see also, e.g., Tr. at 621:12-622:2; 622:24-623:2; 632:10-632:15; 635:1-635:20.)

When reduced to the essence, Joza's claims against Ramada, and with greater vigor

---

[2] Joza attempts to dipsy-doodle around these records by claiming that she did not clock in as required as soon as she arrived on premises and, instead, went directly to her desk to begin her work. Such a claim might be credible if the tale of corporate hostility to paying overtime compensation for overtime hours actually worked, striking fear in the hearts of employees, all of whom were represented by one of New York's largest labor unions, was credible. The Court has already determined that the claim of such hostility to the payment of statutorily required overtime is not believable. Bolstering the Court's adverse finding is the fact that Joza's delayed clock-in contention was not advanced at the pretrial stage and is at odds with her pretrial disclosures. (See, e.g., Tr. at 122:23-123:3; see also Tr. at 159:2-159:6.)

against the individual defendants, amount to an accusation that defendants failed to read the tea leaves. Conceding that she said nothing and did nothing contemporaneously with her performance of work on an overtime basis to put her supervisors on notice of such work (and, in fact, actually misled them by denying that she worked overtime), Joza contends nonetheless that, since some of the individual defendant supervisors were sometimes in the vicinity of her workspace while she was eating at her desk, or when she was present at her desk after her scheduled shift had ended, that they must have realized that she was not only there but working on hotel business and doing so on overtime. (See, e.g., Tr. at 38:3-38:24; 80:8-80:16; 80:24-80:25; 118:20-118:25.)

In counterpoint, the testimony of the individual defendants regarding the hotel's policy and practices covering the subject time period is uniform and believable. There was not a hint of a workplace culture of hostility toward overtime—merely the concern of any well-managed business enterprise to avoid needless overtime. (See Tr. at 126:5-127:17; 459:14-460:4; 555:11-555:20; 562:3-562:13; 599:1-599:16; 600:14-600:19; 601:4-602:2; 615:12-615:18; 621:12-621:17; 626:10-626:24; 656:5-656:25; 659:9-659:14.) It was Ramada policy, they all concurred, to pay overtime compensation to each and every employee who worked beyond the regular work week as required by the CBA and/or by governing state and federal wage and hour laws. (See, e.g., Tr. at 555:11-556:25; 620:23-621:17; 626:22-626:24; see also Tr. at 460:2-460:12.) This was true (as Joza conceded) even when the overtime work had not been pre-authorized as the CBA and hotel policy required. (See Tr. at 436:19-436:23; 550:16-551:4; 656:14-656:16; see also Tr. at 366:23-371:12.)

To be clear, the fact that managers did not require rigid adherence to the contractual rule requiring that all overtime be pre-authorized did not mean that Ramada lacked or failed to follow

7

a formal overtime accounting protocol for overtime work. The testimony of Ramada management, again, was uniform that overtime would be paid to an employee on the basis of that employee's completing an overtime slip and the submission of that overtime slip to the employee's department manager for review. (See, e.g., Tr. at 552:18-552:21; 553:24-554:4; 556:13-566:24; 587:7-587:11; see also Tr. at 620:23-621:11; 621:24-622:2.) The manager would then compare the submitted form with the weekly time clock reports. (See, e.g., Tr. at 558:24-559:21; 620:23-621:11.) Most critically, the Court finds it was also corporate policy for managers to review each employee's weekly time clock report and, should the time clock reports establish that an employee was on the hotel premises in excess of that employee's scheduled hours, the manager was then obliged to make specific inquiry of the employee to ascertain whether that employee had worked overtime without submitting the required overtime form. (See Tr. at 555:11-555:20; 556:5-556:9; 586:23-587:25; 599:1-599:11; 601:13-601:18; 621:12-621:17; see also Tr. at 559:3-559:21; 586:3-586:12.) Perera and Santucci both unequivocally testified that they had made specific inquiry of Joza during the separate periods when each was her supervisor as to whether she had performed Ramada work on an overtime basis on those days on which the time clock confirmed that she had been on premises in excess of her scheduled time. (See Tr. at 601:13-602:2; 621:18-623:2.) On most occasions, they testified, Joza simply indicated that she had not worked overtime and gave various explanations for the time clock discrepancies. (See, e.g., Tr. at 601:19-602:2; 622:3-622:13; 624:21-625:3.) On those occasions when Joza did claim to have worked overtime but had failed to submit an overtime form, Perera and Santucci both testified that they directed her to file the overtime claim and that the overtime due was actually paid. (See Tr. at 599:21-600:5; 601:13-602:2; 615:12-615:18; 621:12-622:2.) Their recollections of Joza denying she worked overtime notwithstanding the time clock

discrepancy are unrefuted.

Staying on the topic of the individual management defendants, the Court finds no basis to conclude that Ramada's supervisory staff had reason even to suspect that Joza had worked beyond her regular hours. First, Joza relies significantly on her contention that she worked through lunch without making claim for compensation. The Court, however, credits the testimony of Ramada's witnesses that the hotel did not have a designated lunch hour for each employee shift. There was, they testified, an approximate three-hour window during which lunch was normally taken. (See, e.g., Tr. at 644:6-644:10.) An employee eating at the employee's work space would not put a supervisor on notice that the employee was working through lunch, regardless when the food was being consumed. Moreover, the Ramada managers who testified could not recall, or did not testify regarding, a single incident where they had observed Joza actually working while she was eating at her work space. (Tr. at 631:21-632:18; 644:14-644:16; 649:21-650:1.) In sum, and most significantly, these managers testified that they followed company policy and protocol designed not to frustrate legitimate overtime claims, but to ensure that, by the reconcilement of payroll and time clock records, each employee was compensated at the appropriate overtime rate for any work actually performed on an overtime basis. Moreover, in harmony with this testimony, and the corporate practices of Ramada, detailed documentary records establish, without dispute, that Joza did, in fact, from time to time in the relevant time period, claim overtime by filing the appropriate overtime forms. Most dispositively, on those forms reporting the overtime, Joza noted, presumably as appropriate, that she had either worked through lunch or after the time her shift had been scheduled to end. (See, e.g., Tr. at 622:22-623:2; 632:10-632:15; see also, e.g., Tr. at 128:20-129:8; 621:12-622:2; 633:16-634:25.) To claim some overtime on the same basis as the overtime that she contends

she worked but was afraid to claim—afraid to the point of being untruthful to her supervisors when they asked her if she had worked the very overtime she now claims, (see, e.g., Tr. at 128:20-129:8; 601:13-602:2; 621:18-622:13; see also, e.g., Tr. at 202:24-203:19)—is, bluntly, not credible. Factually, the claims presented in this action rise or fall, in every practical sense, on Joza's ability to establish, by a preponderance of the evidence, a workplace culture of fear to request payment for overtime legitimately worked. The Court finds, as a matter of fact, that plaintiff has failed to meet that burden and, consequently, these claims fall. The disparate facts in this record cannot be harmonized without some explanation for Joza's failure to claim the overtime as she worked it. The Rosetta Stone for her story is the fear inspired by a workplace culture created by top management. The facts found by the Court are most definitely to the contrary.

## CONCLUSIONS OF LAW

Jurisdiction and venue are not disputed, and are factually established. Joza is a resident of the Eastern District of New York, where the Ramada is also located. Under 28 U.S.C. § 1331, the Court has jurisdiction to hear Joza's FLSA overtime claims and, ancillarily, under 28 U.S.C. 1367, the Court has jurisdiction over the claims that she brings as a matter of New York's state labor law.

Preliminarily, in light of the dramatic parallels in statutory language, the claims brought under FLSA and NYLL tried in this case are thoroughly interwoven. By rule, New York intends to follow, in close pursuit, the FLSA framework. See N.Y. Comp. Codes R. & Regs tit. 12, § 142-2.2. While the measure of recovery in cases dually successful under these wage and hour laws will per force vary, the facts necessary to establish that a covered employee performed overtime work for which the employee has not received statutory overtime compensation will

not. See, e.g., Pereira v. J. Sisters Hair Care Prods., No. 08-CV-4537, 2010 U.S. Dist. LEXIS 53137, at *8 (S.D.N.Y. Apr. 5, 2010). Equally obvious, the presence of the FLSA claim assured a pitched battle and disposition on the merits. Regardless, the parties expend much fume and fury in a skirmish over whether Joza also presents a justiciable claim under New York's labor law. Defendants contend that she does not. They argue, in a throwback to the Catch-22 days of wooden pleading practice, that her state law claims were brought under sections of the labor law dealing with the payment of compensation owed as a result of the existence of an enforceable labor contract, NYLL §190, as opposed to a straight claim for hours worked in excess of the 40-hour week standard, NYLL § 650. In any event, defendants argue further that, assuming the complaint, rather than the evidence presented, stated what Joza really meant, i.e., that defendants were in violation of NYLL because they failed to pay her the overtime to which she was entitled under the CBA, the controversy could not be decided without determining the rights of the parties under the CBA, which the Federal Labor Management Relations Act prevents state law from enforcing. See Tho Dinh Tran v. Dinh Truong Tran, 860 F. Supp. 91, 95 (S.D.N.Y. 1993), aff'd in relevant part, 54 F.3d 115, 118 (2d Cir. 1995). Yet, while the meat of the debate is enticing, and the confrontation is fierce, it is also academic. If defendants carry the day on these pre-emption challenges, there is a nonsuit on the state § 190 claims as a matter of law. On the other hand, the disputed state law overtime claim Joza argues she advanced and actually tried to the Court under § 650 is coextensive with Joza's FLSA claim. Hence, assuming for purposes of argument that the state labor law claims Joza identifies are properly before the Court, this congruency requires the identical result on the state claim as on the FLSA claim, which is nonsuit. Stated differently, the Court need not resolve defendants' legal objection since, accepting plaintiff's statement of her state law claim as controlling, she loses on the merits.

There is yet another element. Setting aside the issue of employer notification, a general assertion that a worker performed uncompensated overtime work for an employer will still not do. There is a need for particularization of the claim. Even "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," Anderson, 328 U.S. at 687, a worker must proffer nonetheless "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002) (quoting Anderson, 328 U.S. at 687); see also Reich v. S. New Eng. Telecomm. Corp., 121 F.3d 58, 66-67 (2d Cir. 1997). Upon such a showing, the burden of production shifts. The employer would then be obligated to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Reich, 121 F.3d at 67 (quoting Anderson, 328 U.S. at 687-88).

Of course, where, as here, "it is undisputed that [the employer's] record-keeping complied with the requirements of the FLSA and New York Labor Law, and that the plaintiff['s] time records were maintained[6] and paid exactly as plaintiff[] fashioned them, meaning that any inaccuracies in [the employer's] records are solely due to the plaintiff['s] deliberate failure to accurately report the time [she] worked," the Anderson burden of production shifting is not applied because "the time record 'deficiencies' alleged by the employee are admittedly and voluntarily self-created." Seever, 528 F. Supp. 2d at 170; id. (finding no support for applying the Anderson test where "the plaintiff ['s] time records were maintained and paid exactly as plaintiff[] fashioned them, meaning that any inaccuracies in [the employer's] records are solely

---

[6] Plaintiff argues that defendants failed to maintain time records for the year 2003. Still, even if the Anderson burden-shifting test is appropriate for claims arising out of that year, defendants have very ably negated the reasonableness of the inference to be drawn from Joza's evidence. See Findings of Fact, supra. Moreover, with respect to the overtime hours in suit, the records would be inaccurate anyway for Joza admits she never filed a contemporaneous claim for them. Id.

due to the plaintiff['s] deliberate failure to accurately report the time they worked"); cf. Anderson, 328 U.S. at 687 (noting that where "the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records."). Indeed, a plaintiff fails to meet her burden where she proves unable "to provide specific facts establishing when, and for how long, [she] performed the off-the-clock tasks for which [she] now seek[s] compensation" and where "the undisputed fact [is] that plaintiff[] never reported this work on [her] timesheets, and . . . that plaintiff['s] allegations rest solely upon [her] own bare recollections." See Seever, 528 F. Supp. 2d at 170; see also id. at 169-71.

A.  Joza failed to prove that she engaged in overtime work for which she was not compensated.

Ultimately, Joza's claim for unpaid overtime rests on her generalized testimony about her job habits: working through her lunch period and working before and/or after her shift. Basically, she contends that these habits were witnessed by many and that, in a non sequitur, those who saw her, including managers, must have known she was doing hotel work. Even if from time to time she did do as she testified, Joza admits that, on occasions, she actually reported and was paid overtime. Plus, under the CBA, she was scheduled to work a 35-hour work week; statutory overtime was not triggered until she worked at least five hours a week beyond her normal time. In fact, other than confirming plaintiff's physical presence, no one could, and no one did, confirm her actual performance of work for which she was not paid any required statutory overtime.

The parallel to Seever, 528 F. Supp. 2d 159, is striking. The district court there faced an analogous record. The court concluded that the "nebulous" and "uncorroborated" recollections of the plaintiffs, counterpointed, as here, by the undisputed evidence that they had been paid for every hour of overtime that they had reported, were insufficient to establish that they had

engaged in any uncompensated "work." Id. at 169-70. For similar reasons, the Court draws the same conclusion here: Joza has failed to prove that she was not paid in full any statutory overtime due her. This analysis also underscores the fatal flaw in Joza's proof—her inability to establish that she was prevented physically, practically, or otherwise from reporting her supposedly unpaid overtime. Thus, she must, as she does, rely on her perception of a workplace culture against paying for legitimate overtime work, which, the Court has already found incredible as a matter of fact.

B.   Joza failed to prove that Defendants knew or should have known that she had worked extra overtime hours without compensation.

From the start, two salient facts were never in dispute. First, completion of an overtime slip was the agreed method by which an employee reported overtime work and obtained overtime compensation. Second, it is also undisputed that plaintiff received overtime compensation for every hour she claimed on her overtime slips and that she claimed none of the subject overtime hours on overtime slips. Her case at trial simply was that, notwithstanding her intentional omission to file overtime slips, the hotel was obligated to pay her overtime because the hotel was aware of it and was the beneficiary of it.

Most authorities in the Second Circuit consider the Ninth Circuit's decision in Forrester to be seminal.[7] In Forrester, the district court had considered, and rejected, the plaintiff's claim of overtime work. In affirming, the Ninth Circuit observed that the employee was aware that overtime was supposed to be reported, and that the employer "regularly paid for such reported

---

[7] On at least two occasions, the Second Circuit has cited Forrester with approval, noting that an employee making a FLSA claim for uncompensated overtime work must not only prove that work was performed in excess of the statutory threshold, but must also show that it was performed with the employer's knowledge. Chao v. Gotham Registry, Inc., 514 F.3d 280, 288 (2d Cir. 2008); see also Holzapfel, 145 F.3d at 524 (citing, inter alia, Forrester for the proposition that "once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours").

15

overtime." Id. at 414 (internal quotation marks and citation omitted). The court of appeals went on to note that the employee had previously submitted the requisite overtime slips and had been "paid for all of the overtime he reported." Id. (internal quotation marks and citation omitted). On all fours with Joza's claim, the plaintiff in Forrester never mentioned to any responsible management official that he had worked and had not been paid overtime prior to filing his FLSA complaint. Id. Rejecting the cat and mouse tactic of failing to file the form acknowledged by employer and employee alike as the procedure through which overtime was paid and then suing to make good on the overtime claim, the court declared:

> An employer must have an opportunity to comply with the provisions of the FLSA. This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation. However, where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of [29 U.S.C.] § 207(a).

Id. at 414-15.

Forrester is not an outlier. Other circuits have embraced its logic. In Newton v. City of Henderson, for example, the Fifth Circuit reversed summary judgment for the employee and ordered judgment for the employer. The court fastened on the fact that the employee was aware of his employer's policy requiring that overtime be authorized and of the payroll form used to report overtime hours worked but, nevertheless, failed to seek overtime authorization and never reported the alleged overtime compensation he was seeking by suit. 47 F.3d 746, 749 (5th Cir. 1995). The court of appeals also considered, and rejected, the plaintiff's argument that his supervisors should have known that he was working the now-claimed overtime hours because they had access to other records from which they could have pieced the claim together. In

16

holding, as a matter of law, that "such 'access' to information does not constitute constructive knowledge," the Fifth Circuit stated,

> If we were to hold that the [employer] had constructive knowledge that [the employee] was working overtime because [his supervisor] had the ability to investigate whether or not Newton was truthfully filling out the [employer's] payroll forms, we would essentially be stating that the [employer] did not have the right to require an employee to adhere to its procedures for claiming overtime.

See id. at 749. Similarly, the Fourth Circuit in Davis v. Food Lion affirmed the district court's rejection of an overtime claim of an employee who failed to report alleged overtime to the employer, which the district court had found had had no actual or constructive knowledge the employee's "off-the-clock-works." See 792 F.2d 1274, 1276-78 (4th Cir. 1986); see also McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1130 (10th Cir. 1998) ("[P]laintiff admitted that he was paid for the overtime hours he included on his time sheet, and that uncompensated time was the result of his failure to adequately record his time. Such failure to record claimed time is fatal to a later claim for such, if the company has no reason to be aware of the overtime."); Brumbelow v. Quality Mills, Inc., 462 F. 2d 1324, 1327 (5th Cir. 1972) (affirming the application of estoppel principles to reject the overtime claim of an employee who had failed to report the alleged additional overtime on the time forms that she had submitted).

District courts have also followed Forrester's lead, including district courts in this circuit. As noted above, one decision among them, Seever, is striking in its similarity to Joza's case. There, the district court dismissed claims for alleged unreported overtime and, in addition to finding that the employees had failed to prove that they actually engaged in any uncompensated work, the court relied upon its finding that plaintiffs had been paid overtime for all of the overtime hours actually reported by them, and observed that any alleged inaccuracies in the

17

employer's records were "solely due to the [employees'] deliberate failure to accurately report the time they worked." Seever, F. Supp. 2d at 170 (emphasis omitted); id. at 169-70. The practical significance, prejudice, and unfairness were not lost on the Seever court. An employee, whether or not having truly worked overtime hours, could manipulate the judicial process by deliberately filing inaccurate payroll records and waiting until the time of suit to confess their inaccuracy. In such circumstance, the worker would render, the court declared, "employer's FLSA-compliant records useless and the employer, through no fault of its own, defenseless to refute the employee's 'recollection.'" Id. at 171. This Court is in accord with the view expressed in Seever, that, absent a credible explanation, the failure of an employee to use a recognized system for reporting and obtaining compensation for overtime work, even if the employee can show the performance of some nonspecific, uncompensated overtime work, the burden of evidentiary production does not shift to the employer.

Joza concedes that she was paid every penny of overtime she claimed on overtime slips. As noted earlier, the claims tried to the Court relate only to overtime work that she allegedly performed but failed to report and/or, under supervisory review, actually denied working, causing the processing of an erroneous payroll report.[8] Clearly, Ramada had taken precaution to guard against erroneous reports by adopting a policy (followed here) where hotel managers reviewed the weekly time clock records of employees, and made inquiry of an employee when it appeared that the employee had been on-site for longer than the scheduled work hours. (See, e.g., Tr. at 555:11-555:20; 556:1-556:12; 586:8-586:12.) Indeed, on some occasions, Joza reported on supervisory reconciliation that she had worked overtime. On those occasions, it is

---

[8] Although the FLSA obligates employers to maintain appropriate overtime records, it is well-established that employers may require employees to follow and adhere to reasonable procedures for reporting overtime worked, and may rely upon what employees report, and do not report. See, e.g., Newton, 47 F.3d at 749; McKnight, 149 F.3d at 1130.

18

undisputed, supervisors saw to it that overtime slips were submitted on her behalf, and that she was paid. (See, e.g., Tr. at 599:21-600:5; 621:18-622:2; see also, e.g., Tr. at 556:13-556:24.) On the other occasions, Joza's supervisors recall plaintiff explaining time clock discrepancies in various ways, including having failed to clock out when she left for a doctor's appointment to having been on-site waiting for a ride home. Joza's claims at trial, hollowed by the failure to make contemporaneous claims in compliance with the contractually agreed hotel system for obtaining overtime compensation, cannot be saved by an eleventh hour shifting of the burden of production to Joza's employer.[9]

As the Ninth Circuit first explained nearly 30 years ago in Forrester, "[a]n employer must have an opportunity to comply with the provisions of the FLSA," and "where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of" the FLSA's overtime requirements. Forrester, 646 F.2d at 414-15. In this case, defendants had no knowledge (actual or constructive) of Joza's alleged extra overtime work. In fact, it was Joza herself who prevented defendants from learning about her alleged extra overtime work. In such circumstances, proof of wage and hour law violations comes up short.

Nor is any flesh added to the bone by Joza's contention that the hotel should have known, in spite of what amount to her own time record misrepresentations, that she was working extra, unreported, overtime hours because, for example, managers periodically passed by her cubicle and should have noticed that she was there during the usual lunch period and outside of her

---

[9] Neither Joza nor any of her witnesses, including her sister who also worked in the reservations department, disputed that her managers inquired of her when the weekly time clock records indicated that she had been on site for longer than her scheduled work hours. Additionally, the anecdotal evidence, including one time sheet bearing Santucci's notations, and corresponding overtime authorization forms that were subsequently completed and signed by Santucci, corroborate the fact that such inquiries took place and resulted in Joza receiving overtime pay when she said that she had worked overtime. (See Tr. at 621:24-622:2; see also, e.g., Def. Exs. G, M; Tr. at 554:18-555:10; 557:13-560:11.)

19

assigned shift hours. But, especially in light of her denials of working overtime, her non-work explanations for her off-hour presence at the hotel and evidence showing she was, indeed, at times engaged in non-employer activities, to find that the managers should have somehow divined she was working overtime would require the exercise of sheer speculation.

Simply put, Joza has failed to establish that she worked any uncompensated overtime hours, much less establish the number of hours worked and the amount she was shorted. Nor did she offer any proof that would properly shift the burden of production to the hotel. Not only is the evidence overwhelming that defendants were unaware of any uncompensated overtime work Joza claims she performed, but also the evidence is equally overwhelming that defendants' lack of such knowledge (even if the work was performed) is directly attributable to plaintiff's determination not to comply with the established overtime reporting and compensation procedure created by the CBA. Other than overtime compensation that might have been due her for overtime work she deliberately chose not to report, Joza was paid every penny of overtime she chose to report and process. Consequently, judgment must be for defendants on all of plaintiff's claims.[10]

**CONCLUSION**

Following trial on the merits, judgment on all claims asserted by plaintiff Jenny Joza is for defendants.

The Clerk is directed to enter judgment and to close this case.

---

[10] On September 30, 2009, Joza filed an emergency motion for pre-judgment attachment, pursuant to Federal Rule of Civil Procedure 64 and article 62, section 6201, of the New York Civil Practice Law and Rules. On October 15, 2010, Magistrate Judge Orenstein issued a Report and Recommendation ("R&R") recommending that the motion be denied. (See Docket No. 07-CV-4153, Document Nos. 78, 100.) No objections to the R&R were timely filed. There being no clear error, the recommendation of Magistrate Judge Orenstein is accepted in its entirety and such adoption is subsumed in this Memorandum and Opinion.

SO ORDERED.

Dated: Brooklyn, New York
      September 9, 2010

                                                                             _____
                                                                            ERIC N. VITALIANO
                                                                            United States District Judge